FREDERICK P. SAWYER ET AL. V. NELSON DULANY ET UX.

The 86th section of the act to regulate proceedings in the district court means any instrument in writing upon which the action is founded, in whole or in part, whether executed by the party himself, or by another with his authority. (Paschal's Dig., Art. 1443, Note 549.)

It is only necessary that the instrument be in writing, and be signed by the party, or by some other person for him; and if it be stated that it was so signed, it is evidence, without further proof, unless the party plead *non est factum* under oath.

A receipt for stage fare, signed by the contractor, is an instrument in writing within the meaning of article 1443.

The receipt read as follows: "Received of N. Dulany $42 00, his stage fare for three seats from Navasota to Waco, SAWYER & Co. per W. B. BATES. HOUSTON, *February* 24, 1860." The legal purport of this contract is, that the carriers agreed to convey three passengers by stage-coach from Navasota to Waco; and they further promise to provide careful drivers, of reasonable skill and good habits, for the journey, and not to overload the coach with either passengers or baggage, and to take care that the weight is suitably adjusted, so that the coach should not be top-heavy. (Paschal's Dig., Art. 452, Note 329.)

Where the stage-coach was so carelessly driven by a drunken driver that he capsized the coach and greatly injured a female passenger, causing her to miscarry, the carrier is liable for all the immediate results, and he cannot complain that such passenger was not in a condition to have a stage upset.

APPEAL from McLennan. The case was tried before Hon. RICHARD COKE, one of the district judges.

As the case is the first of the kind in the Texas Reports, a fuller history of it than usual is given.

This was a suit by the appellees against the appellants, who are passenger carriers, to recover damages for injuries to the person of one of the appellees, caused by the upsetting of the coach in which the appellees were passengers.

The petition alleged that Nelson Dulany, his wife, and three children took passage, in the coaches of the appellants, from the town of Navasota to the town of Waco; that, by reason of the drunkenness and gross negligence of one of the drivers on the route, the coach in which appel-

lees and their three children were then travelling was up-set, and that the wife, Mrs. E. L. Dulany, was very greatly injured; that at the time of the upsetting of the coach, by which the injury to Mrs. Dulany was caused, "she was in an advanced state of pregnancy, being within two weeks of confinement, according to the usual course of nature."

The damages were laid at the sum of $23,542.

In an amended petition, filed September 24, 1860, the contract to carry is more particularly alleged, and the payment of the stage fare is stated as follows: "And the said Sawyer, Risher & Hall did then and there, (meaning at Houston,) through their authorized agent, W. B. Bates, receive from the said plaintiff, N. Dulany, the said $42, and did then and there execute and deliver to the said N. Dulany a receipt therefor, which is, in words, as follows, to wit: 'Received of N. Dulany $42, his stage fare, three seats from Navasota to Waco. Houston, February 24, 1860. Sawyer & Co., per W. B. Bates.'"

There was a verdict for plaintiffs for the sum of $4,125.

There was a motion for a new trial, which was over-ruled.

A bill of exceptions saved the objection to admitting in evidence the receipt of Sawyer & Co., signed by Bates, without proof of its execution. It appears, among other things, from the statement of facts, that the driver, Marshall, got very drunk at Marlin, some twenty-six miles from Waco; that at Hatch's, a stand some fourteen miles from Waco, where the passengers got breakfast, his condition was such as to unfit him to drive. This the plaintiffs saw, and Mrs. Dulany objected to going on, informing her husband that she had nearly been turned over in the Brazos bottom the night before, when the other passengers were walking. Hatch, the agent of the company at the stand, was appealed to, and said the driver was too drunk, but that he had no other driver to send. The driver was in this drunken condition when the stage was upset.

The facts proved are sufficiently set forth in the opinion of the court.

*James H. Bell,* for appellants.—I. The action was not founded in whole or in part upon the receipt for the passage money. It was therefore improper to admit it in evidence without proof of its execution.

It would be giving to our statute (Paschal's Dig., Art. 1443) a latitude of construction never intended by the legislature, to hold that it authorized the admission, without proof of execution, of every instrument of writing which contained the evidence of some fact necessary to make out the case, either of the plaintiff or defendant, simply because such writing was set forth in the petition or answer. A close examination of this statute, and of the former laws on the same subject, will, I am sure, lead the court to the conclusion, that it was only intended to dispense with proof of the execution of written contracts for the payment of money, either absolutely or in the alternative. This was the view taken by this court in the case of Durst v. Swift, (11 Tex., 273.)

I repeat, that the writing, the admissibility of which is now under consideration, does not in itself express any contract, much less the contract set forth in the petition.

But there is another reason why this writing was not admissible without proof of execution. It was a part of the evidence of the actual pecuniary damage which the plaintiff sustained by the breach of the contract to carry. Amongst the allegations of damage contained in the original petition is the following: "And further, they charge that they paid out to said stage company forty-two ($42) dollars for carrying them to Waco from Navasota, as aforesaid."

II. But it may be said, that no proof of payment is necessary, and that passenger carriers are liable for negligence, though they carry the plaintiff gratuitously. This

xxx—31

proposition cannot be established, though exceptions may be made to the general rule, founded upon the circumstances of particular cases.

The contract to carry must be proved. (2 Stark. on Ev., 199; 2 Greenlf. on Ev., § 222.) The consideration is an essential element of every contract.

The cases in 14 and 16 Howard are not authoritative against the proposition, that the passenger must pay his fare in order to entitle him to recover.

The case of The Philadelphia and Reading Railroad Company v. Derby, 14 How., 468, was decided upon the law of agency, and not upon the law of carriers.

The case in 16 How., Steamboat New World v. King, was decided upon its particular circumstances, and involved an admission of the general rule, that some consideration must pass to the carrier to subject him to liability.

III. I contend that the court below erred in refusing the fourth instruction asked by the counsel for the defendants; or perhaps, to speak more correctly, the court below erred in not giving to the jury a special instruction upon the point suggested by the fourth instruction asked.

The point of the instruction was, that the peculiar physical condition of Mrs. Dulany was a circumstance to be taken into consideration by the jury in determining the damages to be awarded.

The law on the subject of exemplary or punitory damages was invoked by the plaintiffs in this case. The amount of such damages rests in the sound discretion of the jury, and every circumstance of the case is proper to be considered, either to aggravate or to mitigate the damages: I mean that every circumstance of fraud, oppression, cruelty, or malice, may be shown by the plaintiff, and *e converso*, the defendant may show any circumstance, either respecting the conduct or the physical condition of the plaintiff, by which the injury to the plaintiff from the particular negligence complained of is increased beyond what it would

have been in the great multitude of like cases. I mean
that it is the duty of the court so to instruct the jury. (2
Greenl. on Ev., sec. 232a; Hadley v. Baxendale, 9 Exch.
341; Butterfield v. Forrester, 11 East., 60; and other cases
cited in note to 2 Greenl., sec. 232a.)

IV. I insist that the court below erred in not instruct-
ing the jury that the plaintiffs were not entitled to recover
anything for the loss of the two children, alleged in the
petition to have been still-born, and shown in the evidence
to have been born alive, but to have died in five or six
hours after birth.

The common law gave no right of action for the death
of a human being.

Our statute of 2d February, 1860, which authorized the
heirs, representatives, or relations of deceased persons to
sue and recover damages, &c., &c., is applicable only to
persons in being, and cannot apply to a case of injury to
infants in the womb of the mother; and, more than this,
the statute did not go into effect until 15th April, 1860, six
months after the injury complained of.

*S. H. Renick,* also for appellants.

*M. D. Herring,* for appellees.

MORRILL, C. J.—This suit was brought by Dulany and wife
v. Sawyer *et al.,* proprietors of a stage coach. The record
discloses that the plaintiffs below were passengers in a stage
coach owned by defendants, and traveling from Navasota
to Waco, with fifteen other passengers, seventeen in all;
that plaintiff had prepaid his passage money, and during
the journey the stage was upset, whereby the wife of Du-
lany was so severely injured that she was unable to proceed
further on the journey, was taken to the nearest house,
where she remained under the care of a physician for six
days, when she was delivered of two children of premature

birth, who survived about two hours. At the time of the trial in the district court, which was six years after the accident, Mrs. Dulany walked like she was stiff in her hips; that the driver of the coach, at the time of the accident, was greatly intoxicated, and had been more or less so for some time; that the passengers, at the different stage stands, expressed their anxiety to have the driver replaced by a sober man, but the agents replied that no other could be furnished; that the cause of the coach upsetting was by being driven upon a stump from four to six inches high in descending a hill very rapidly, and that the same could have been easily avoided.

The judge charged the jury—

1. That if they find from the evidence that the defendants were the owners of the stage coach engaged in carrying passengers, they are liable in this action for compensatory damages for the injuries shown by the testimony to have been sustained by the plaintiff, if the evidence shows the least negligence, want of skill or caution, or any careless-ness on the part of the driver of said coach in which plain-tiffs were passengers.

2. That defendants are not responsible, in vindictive or exemplary damages, for the acts of their driver or agent; but if said defendants were guilty of gross negligence, the jury may take into consideration the general character of the driver for care and skill, his condition at the time of the accident, and at any previous time while in the employ of defendants, and determine whether the defendants were guilty of gross negligence in the fact of their having him in their employ.

3. That if the jury believe from the evidence that the injuries complained of were occasioned solely by the want of skill or caution of the driver, they will give the plaintiffs compensatory damages; if they believe said injuries, or any part, were caused by the want of proper care and pru-dence on the part of plaintiffs, they will not award any

compensation for such injuries; if the jury believe from the evidence that any part of the injuries resulted from the want of proper care and prudence of both plaintiffs and driver, they will not award damages for such injuries.

The first error assigned is, that the court erred in admitting the receipt for the stage fare. The bill of exceptions taken shows that during the trial the plaintiffs offered to read a receipt for the stage fare of defendants by their agent, which was objected to, unless the execution of said receipt was proven.

As this assigned error of the district judge was the principal one relied on for reversal, we have particularly examined the same. The statute (Paschal's Dig., Art. 1443) provides, that "when any petition, answer, or other pleading shall be founded in whole or in part on any instrument or note in writing charged to have been executed by the other party or by his authority, and not alleged therein to be lost or destroyed, such instrument or note in writing shall be received as evidence without the necessity of proving its execution, unless the party by whom or by whose authority such instrument or note in writing is charged to have been executed shall file his affidavit in writing denying the execution thereof." The petition recited that the plaintiffs had paid $42 as their stage fare, and described, *in hæc verba*, the receipt for the same signed for the defendants by their agent.

There can be no doubt that the legislature intended that the signature of any party to an instrument should by the profert of the same be regarded as proved, and thus doing away with the necessity of calling witnesses to prove it; and in order that the act should not be the cause of injustice to the party against whom it was designed to be used, the same was required to be set forth in the petition, answer, or other pleading. The statute does not designate one particular class of instruments, such as bills of exchange or promissory notes; but inasmuch as the same reason

existed for admitting one instrument or note in writing without proof of its execution as another, therefore it provided, in as broad and comprehensive a manner as possible, for " any instrument or note in writing," and still further, not only those that purported to be actually executed by the party, but "by his authority." Still further, inasmuch as the policy of the law requires that there should be as little strife as possible, and that all matters in dispute between parties should be adjudicated as far as practicable in a single action, it was contemplated by the legislature and provided in the statute that said instruments might be used, whether they formed the whole or part of the complaint or defense. It is difficult to conceive how a statute could be worded so as to be more extensive in signification than this.

The same policy of dispensing with testimony to prove the execution of instruments is shown by article 3716 of Paschal's Digest, which authorizes deeds and similar instruments, which have been or may be recorded, to be used, by filing the same with the records of the suit, and giving the opposite party three days' notice of the same. We therefore believe that the legislature intended by the act to declare, that " any and every instrument or note in writing," in cases properly pleaded, whether the same was the whole or any part of the testimony, and for either plaintiff or defendant, could be used, provided it was signed, or purported to be signed, by the opposite party or his agent, without proving the signature, unless *non est factum* be pleaded by the party charged.

The appellant insists that this action is for a tort, a suit for unliquidated damages, and that the receipt for the payment of the passage money could have no other effect than to prove the passage money was paid, and that this action is not founded in whole or in part on the same. The receipt was as follows:

"Received of N. Dulany $42, his stage fare for three seats from Navasota to Waco.

"HOUSTON, *February* 24, 1860.          SAWYER & Co.

per W. B. BATES."

This receipt is a memorandum of a contract executed by Dulany and executory by Sawyer & Co.

The legal purport of this contract is, that said Sawyer & Co., for and in consideration of the sum of $42, paid by Dulany, agreed to convey three passengers, by stage coach, from Navasoto to Waco, said passengers to be furnished by said Dulany; and they further promised, to "provide careful drivers, of reasonable skill and good habits, for the journey, and "not to overload the coach either with passengers or with luggage, and to take care that the weight is suitably adjusted, so that the coach should not be top-heavy and made liable to overset." (Story on Bail., §§ 593, 594.)

This suit is for a breach of this contract, and the breach alleged is, that the defendants neglected to furnish a driver of good habits, and that they so overloaded the coach with passengers that the same became top-heavy and liable to overset, and that, by the careless driving of an inebriated driver and the overloading of the stage, the coach was upset and the plaintiffs injured. We believe that the suit was founded in part on this receipt containing the implied contract, and as it was set forth in the petition and its execution not denied under oath of defendants, it was properly admitted.

Another exception insisted upon by defendant is, that the judge erred in refusing to give the fourth charge requested, which was: "The defendants are not responsible for any injury that is not shown from the evidence to have been the result of the act complained of, and that they are not responsible for the injury that resulted from the peculiar condition of the plaintiff, Mrs. Dulany, but only for such

an injury as would ordinarily have resulted to a person not so circumstanced."

We have stated the entire charge of the judge, and we conceive that it is as favorable for the defendants as could have been legally given. The last part of the same, which is, that "if the jury believe from the evidence that any part of the injuries resulted from the want of proper care and prudence of both the plaintiff and driver, they will not award damages for such injuries," certainly is as favorable to defendants as the law permitted.

Passenger carriers do not undertake to carry those of the stronger sex only, or those of such robust constitutions or mental conditions as are less liable than others to receive injuries from the recklessness of the carriers or their agents. Their liability depends not upon the physical ability of the passengers, but upon their own conduct. The very fact that some of the passengers were in such a condition that the upsetting of the stage crowded with passengers would be likely to produce serious results to them certainly ought not to be pleaded in mitigation of damages, when these serious results are the consequence of the violation of duty on the part of the carriers. We think the law was correctly given. It was the province of the jury to assess the damages. We see no error, and the judgment is

AFFIRMED.