GULF, COLORADO & SANTA FE RAILWAY COMPANY v. J. W. REDEKER ET UX

Decided February 16, 1907.

**1.—Transportation of Passenger—Delay—Damages—Tort.**

The plaintiffs, husband and wife, boarded defendant's train at Ft. Worth to be carried to their home, distant about one hour's ride; the train was delayed and held at Ft. Worth about three hours; no notice was given to the plaintiffs of the intended delay of the train, and they remained in the car; the weather was warm and sultry and the car unventilated; the wife had recently undergone a severe surgical operation and had just been discharged from the hospital; she was still nervous, weak and debilitated; she had need to use the toilet in the coach but could not do so because it was locked; because of the extreme heat and discomfort during her confinement in the car the wife became very nervous and weary and suffered great physical and mental pain and mortification from which resulted a nervous shock and collapse that rendered her helpless to such an extent that upon arrival at her destination it was necessary to carry her upon a cot from the train to her home; she was thereafter confined to her bed with fever for two weeks, and chronic bladder trouble ensued. Under these facts plaintiffs' cause of action was one for a tort, founded upon a contract, and not one simply for special damages resulting from breach of contract.

**2.—Same—Degree of Care—Notice.**

A railway company owes a duty to persons other than those of ordinary healthful condition. They are presumed to know that persons, old, decrepit and infirm travel on their trains and they must exercise care accordingly.

Appeal from the District Court of Johnson County. Tried below before Hon. O. L. Lockett.

*Brown, Bledsoe & Lomax, J. W. Terry* and *Chas. K. Lee,* for appellant.—That the damages claimed in this case are special in character, and not such as would be regarded under the law as within the reasonable contemplation of the parties without notice. International & G. N. v. Harder, 81 S. W. Rep., 356; Jones v. Texas & N. O. Ry., 23 Texas Civ. App., 66; St. Louis & S. W. Ry. v. May, 44 S. W. Rep., 408; Hot Springs Ry. Co. v. De Loney, 45 S. W. Rep., 351; Planters' Oil Co. v. Mansell, 43 S. W. Rep., 913; Pullman Car Co. v. McDonald, 21 S. W. Rep., 945; Missouri, K. & T. v. Hannig, 91 Texas, 347; Gulf, C. & S. F. v. Hamilton, 17 Texas Civ. App., 85; Trinity & S. Ry. v.

O'Brien, 18 Texas Civ. App., 693; Belton v. Lockett, 57 S. W. Rep., 687; Mathew v. Wabash, 78 S. W. Rep., 271.

Notice of special damages to be binding on the carrier must be given at the time that the contract for shipment is entered into.  Notice given thereafter is not effective to bind the railroad company.  Missouri, K. & T. Ry. Co. v. Belcher, 88 Texas, 549; s. c., 89 Texas, 428; Pacific Exp. v. Redman, 60 S. W. Rep., 677; Steffen v. Mississippi R. & B. Ry. Co., 56 S. W. Rep., 1125; Bradley v. Chicago, M. & S. P. Ry. Co., 68 N. W. Rep., 410; St. Louis & S. W. Ry. v. May, 44 S. W. Rep., 408.

That notice to the brakeman was not notice to the railroad company. International & G. N. Ry. v. Anderson, 82 Texas, 516.

*S. C. Padelford,* for appellees.—Under the laws of this State, a railway corporation, as a common carrier is required to start and run their cars for the transportation of passengers at regular times to be fixed by public notices, and shall furnish sufficient accommodations for the transportation of all passengers within a reasonable time previous thereto, and a railroad company is responsible for all damages which result to a passenger from any unreasonable delay, and the trial court did not err in so charging.  Sayles' Civil Statutes, vol. 2, sec. 4226; St. Louis S. W. Ry. Co. v. White, 89 S. W. Rep., 746; Sears v. Eastern Ry. Co., 14 Allen (Mass.), 443; Heirn v. McCaughan, 66 Am. Dec., 590; Hutchinson on Carriers, sec. 604, 605, 608; Quimby v. Vanderbilt, 17 N. Y. 306; Williams v. Vanderbilt, 28 N. Y., 217; Van Buskirk v. Roberts, 31 N. Y., 661.

The law fixes upon the carrier of passengers an imputed if not actual knowledge that the aged and infirmed and those in a delicate condition may and do travel on passenger trains of the country, and they must exercise the care required by law in view of this imputed if not actual knowledge.  Pecos & N. T. Ry. Co. v. Williams, 78 S. W. Rep., 5; St. Louis S. W. Ry. Co. v. Ferguson, 64 S. W. Rep., 797; Sawyer v. Dulany, 30 Texas, 479; East Line & R. R. Ry. v. Rushing, 69 Texas, 306.

TALBOT, Associate Justice.—This suit was brought by J. W. Redeker and his wife, Mrs. Lou Redeker, to recover damages on account of sickness and injuries caused the wife by reason of appellant's train, upon which she was a passenger, being held at Ft. Worth, Texas, on the evening of August 20, 1905, from 5:10 o'clock p. m. to 8 o'clock p. m. of the same day.

The material facts are substantially as follows:  Mrs. Redeker resided at Joshua, Texas, on appellant's line of railroad and about twenty miles from Ft. Worth.  She was afflicted with a large ovarian tumor and went to the Protestant Sanitarium in Ft. Worth for the purpose of having an operation performed, removing it.  The operation was performed and the tumor, weighing about twenty pounds, removed on July 20, 1905. After the operation Mrs. Redeker remained at the Sanitarium until August 17, 1905, when she was dismissed by her physicians as being sufficiently recovered to return to her home.  She went, however, from the sanitarium direct to the residence of her mother-in-law in the city of Ft. Worth, where she remained for about three days with a view of gaining more strength before starting on her trip home.  J. W. Redeker

had on August 19, 1905, purchased a ticket over appellant's road from Joshua to Ft. Worth and return, and went to the latter place to accompany his wife home. On the next day, August 20, about 4 o'clock in the afternoon Mr. and Mrs. Redeker repaired to appellant's depot in Ft. Worth for the purpose of returning to their home over appellant's railroad. At this time, appellant was running a passenger train from Cleburne, Texas, to Purcell, in the Indian Territory, and return. This train passed through Joshua, the home of appellees, and was scheduled to arrive, on its return from Purcell, in Ft. Worth at 5 o'clock p. m., and depart for Cleburne at 5:10 or 5:15 p. m., arriving at Joshua at about 6:05 p. m., the same day. When appellees arrived at the depot in Ft. Worth Mr. Redeker examined appellant's bulletin board and observed that this train was marked "on time" and then purchased a ticket from appellant's agent for his wife. At five o'clock said train arrived at the depot in Ft. Worth and appellees got on board. The appellee, J. W. Redeker, had but one leg and was hardly capable of rendering his wife sufficient assistance in boarding and alighting from the train, and he informed appellant's train porter or brakeman, who was present, and whose duty it was to aid passengers in getting on and off the train, that his wife had recently undergone a very serious surgical operation and was weak and that when they arrived at Joshua he must assist her off the train. Appellees entered a coach and took their seats expecting the train to go out on time. This, however, it did not do, but remained there under the car shed until 8 o'clock that evening. When Mrs. Redeker entered the coach and took her seat she was feeling well, but the train standing there was practically surrounded by box cars, etc., the breeze cut off and the weather and car in which she was sitting extremely warm and sultry. Appellees were not informed that the train would be delayed and remained in the coach thinking every moment the train would go forward on its journey. Mrs. Redeker was weak and debilitated from the operation she had undergone and on account of the extreme heat and discomfort she was compelled to endure in the car on account of the delay of the train, she became very weary and nervous, and after the train had remained standing at the depot for more than an hour she overheard some stranger remark that the train would not leave Ft. Worth until 8 o'clock that night. When this information was received Mrs. Redeker in her extreme weakened and nervous condition, produced by the delay of the train and the excessive and debilitating heat to which she was thereby subjected, suffered a nervous shock and collapse which rendered her practically helpless. At this time none of appellant's employes were in sight and had not been since appellees took their seats in the car. The nervous shock and collapse suffered by Mrs. Redeker disabled her to such an extent she could not then leave the train and her husband having but one leg was unable to assist her off. While the train was at Ft. Worth and after Mrs. Redeker had experienced the shock and collapse, she desired to enter the water closet to attend a call of nature, but her husband upon attempting to open the door found it locked. She continued to grow worse, got sick at her stomach and after the train left Ft. Worth, being unable to longer control herself, she discharged her urine upon her clothes. She suffered great pain in her hips and abdomen and when Joshua was reached she had to be placed on a

cot and taken to her home. She testified that at this time she was cold all over and thought she was in a dying condition. She was confined to her bed for two weeks with fever every day, and the strain upon her urinal organs while on the train, together with the nervous shock and collapse, produced serious injury thereto, causing intense pain and finally resulting in a chronic bladder trouble, which, there is testimony to show, will probably never be cured. There was no satisfactory or sufficient excuse shown for the delay of the train at Ft. Worth. The conductor in charge thereof was notified in a few minutes after its arrival at Ft. Worth that the train would not go out until 8 o'clock that night, of which he informed the engineer and train porter, but did not inform appellees. This conductor testified, and it was not contradicted, to the effect that the porter on this train did all the duties of a brakeman, that it was the duty of the porter to assist the passengers on and off the train and the porter's duty or his own duty to inform the passengers that the train would be delayed at Ft. Worth. He further testified that if the porter knew there was a sick lady on the train it was his duty to tell her to get off the train that it was going to be delayed. Neither the ticket agent of appellant who sold J. E. Redeker the ticket for his wife, nor the conductor in charge of the delayed train, was informed that Mrs. Redeker had recently undergone the operation for the removal of the tumor or that she was weak and debilitated on account thereof.

Appellant has filed in this court a written waiver of all of its assignments of error, except the first, second, third, fourth, fifth, sixth and seventh, and these are insisted upon only to support the questions raised by the following propositions thereunder: "(a) That damages, if any, sustained by Mrs. Redeker by reason of the fact that she was weak, debilitated and in bad condition from her recent operation were damages special in character and not within the reasonable contemplation of the parties, and for which no recovery can be had unless notice that such damages were likely to accrue was given to the defendant at the time her ticket for passage was purchased and the contract for transportation was entered into; (b) That notice given to the carriers after the contract was entered into as to such special damages, even though such notice were given, would not make the defendant liable for the resulting damage; but in order to fix responsibility on defendant the notice must have been given at the time the contract for passage was made by the purchase of the ticket; (c) That in any event notice to a negro porter on the train, a mere menial and the lowest order of subordinate, was not such notice as in any event would fix the responsibility of the carrier, particularly in a case where, as in this case, the undisputed evidence shows that both the conductor of the train and the ticket agent who sold the ticket were of easy access, and to them or either of them notice could easily have been given."

The rule is well established that in strictly actions for a breach of contract, special damages can not be recovered unless it is alleged and proof made that at the date of the contract the defendant had notice of the special conditions or circumstances rendering such damages the natural and probable result of the breach. In such cases notice given after the making of the contract will not suffice. Missouri, K. & T. Ry. v.

Belcher, 89 Texas, 428. But we do not regard the present case as such
an action, but rather one for a tort, founded upon contract. The nature
of Mrs. Redeker's injuries and damages sought to be recovered were
properly and completely averred. The wrongful acts charged which
resulted in her injury and which were established by the evidence, con-
stituted actionable negligence on the part of the appellant, amounting
to a tort and, in our opinion, the rule above stated, applicable to special
damages, does not obtain. The appellant as common carrier of passen-
gers owed Mrs. Redeker the duty to exercise that high degree of care
for her personal comfort and safety, which a very cautious and prudent
person would have exercised under the circumstances of the situation,
and the question is not whether the damage done her entered into the
consideration of the parties in advance, but simply whether it is fairly
and directly the result of the injurious acts. These views, we think, are
sustained by several decisions of the courts in this State. The case of
Sawyer v. Dulany, 30 Texas, 479, was a suit to recover damages for in-
juries to the person of Mrs. Dulany, caused by the upsetting of a stage
coach in which she was a passenger, through the negligence of a drunken
driver. Mrs. Dulany was pregnant and in consequence of the upsetting
of the stage coach was injured and caused thereby to give premature
birth to twins. Upon the trial of the case the proprietors of the stage
company requested the court to charge the jury that they were not
"responsible for the injury that resulted from the peculiar condition of
the plaintiff, Mrs. Dulany, but only for such an injury as would ordi-
narily have resulted to a person not so circumstanced." This charge was
refused and in sustaining the action of the trial court, the Supreme
Court said: "Passenger carriers do not undertake to carry those of the
stronger sex only, or those of such robust constitutions or mental con-
ditions as are less liable than others to receive injuries from the reck-
lessness of the carriers or of their agents. Their liability depends not
upon the physical ability of the passengers, but upon their own conduct.
The very fact that some of the passengers were in such condition that
the upsetting of the stage, crowded with passengers, would be likely to
produce serious results to them, certainly ought not to be pleaded in
mitigation of damages, when these serious results are the consequence of
the violation of duty on the part of the carriers." This language of
the Supreme Court is quoted and approved by the Court of Civil Appeals
for the Second District in the case of St. Louis S. W. Ry. v. Ferguson,
64 S. W. Rep., 797. In that case plaintiff's wife was pregnant and a
passenger on the railway company's train. Through the negligence of
the company's servants an engine or train collided with the car in which
Mrs. Ferguson was seated with such force that she was partially knocked
from her seat and greatly shocked, jerked and injured, causing her phys-
ical and mental suffering and resulting in the premature birth of her
child. The court instructed the jury to the effect that the railway com-
pany owed Mrs. Ferguson the duty to exercise that high degree of care
for her reasonable personal safety, which a very prudent person would
use under the same circumstances about the same matter, and that a
failure to exercise such care would be negligence. This charge was ob-
jected to and the proposition contended for by the railway company,
that without knowledge of the delicate condition of Mrs. Ferguson, the

degree of care imposed by law upon it was that due to all persons in usual and ordinary physical condition, and not such as might have been due to one "in the light of attending circumstances." This proposition was not sustained, and in discussing the question the Court uses the following language: "The court gave the proper standard of care; and the degree of care so prescribed in our judgment must be exercised by the carrier of passengers in the light of an imputed, if not actual, knowledge that the aged, the infirm and those in delicate condition may and do constantly travel on the passenger trains of the country. Humanity is heir to many ills and destructive conditions requiring notice and peculiar care, and those commonly and constantly engaged in their transportation for hire ought not to be heard to say in excuse for their negligence, 'We were without notice of the fact.'" In East Line & R. R. Ry. v. Rushing, 69 Texas, 306, the objection to the court's charge was that the company's liability was made to depend upon whether the force of the engine was sufficient to throw the plaintiff down, and not whether it was sufficient to throw a person of ordinary physical ability. In disposing of the objection our Supreme Court said: "The charge as given is correct law. A railway company owes a duty to persons other than those of ordinary physical condition. They are presumed to know that persons, old, decrepit and infirm travel on their trains and they must exercise care accordingly." But again, in the case of Pecos & N. T. Ry. Co. v. Williams, 78 S. W. Rep., 5, the appellee was a passenger of the appellant, was carried about a mile beyond her station and put off the train. She alleged, among other things, that she was, and had been for a long time prior to the wrongs complained of, a frail and delicate person and had been afflicted with an ear trouble since her early childhood; that she was compelled, because of her ejection from appellant's train, to walk back to her station, through snow and storm, and that as a direct result of her exposure therefrom she took a severe cold, which resulted is tonsilitis, excruciating pains in her neck and head and a pus discharge from her ear. The principal controversy arose from the objection presented by the railway company to the averments that appellee was a person of delicate health, unprotected with sufficient wraps, etc., to withstand the storm of rain, sleet and snow and had been afflicted with ear trouble since her early childhood. It was contended, in effect, that in the absence of notice of such conditions of the person, appellant was not liable for such injuries as may have resulted to appellee "in excess of what would have resulted to a woman in a natural state of health and clothed as one would naturally be expected to clothe herself to make such a trip in such weather." This contention was held to be not well taken, and in effect, that the allegations of appellee's physical condition when ejected from appellant's train, her affliction with an ear trouble, and her suffering on account of the exposure to which she was subjected by reason of appellant's wrongful acts, were proper, and proof thereof admissible, although the appellant had no notice of such conditions. See also Driess v. Frederich, 73 Texas, 460. We approve the remarks made in the foregoing cases and think the principles of law therein enunciated are applicable to the case under consideration.

Mrs. Redeker, by reason of the surgical operation which had recently been performed upon her, was weak, debilitated and naturally very sus-

ceptible to the extreme heat, to which she was subjected and to the injurious effect resulting to her from the negligent delay of the train upon which she had taken passage, and failure of appellant to sooner notify her of such intended delay. That she would, in her physical condition, under the circumstances in which she was placed, become very much fatigued and probably suffer the nervous shock, collapse and resultant injuries which she did in fact experience, or some similar injuries, might reasonably have been expected, and such injuries we think must be regarded as the natural and probable consequences of the wrongful and negligent acts charged against the appellant.

But if we are correct in the conclusion that appellees' right to maintain this suit and recover the damages claimed is not dependent upon notice given to appellant's ticket agent when the contract of carriage was entered into, then appellant had actual knowledge of Mrs. Redeker's having recently undergone a surgical operation at the time she boarded the train and required special care and attention. The testimony is undisputed that the train porter or brakeman whose duty it was to aid passengers in getting on and off the train, was informed while assisting Mrs. Redeker to get upon the train, that a serious operation had recently been performed upon her, that she was weak and would require assistance in alighting from the train at Joshua. He also must have known from observation that Mrs. Redeker's husband had but one leg and was thereby largely incapacitated to render her such aid and attention as her enfeebled and debilitated condition would require. It was further shown by appellant's conductor in charge of the train, that it was the duty of the porter, who had been informed of Mrs. Redeker's condition, to have informed the passengers that the train would be delayed at Ft. Worth, and that if he knew there was a sick lady on the train it was his duty to tell her to get off. This was notice to appellant of the facts communicated to its porter, and having accepted Mrs. Redeker as a passenger under these circumstances, the law required it to exercise a degree of care commensurate with the responsibility thus assumed, such care being such as would reasonably insure or secure the safety of Mrs. Redeker in view of her physical condition. (Gulf, C. & S. F. Ry. Co. v. Coopwood, 96 S. W. Rep., 102; Croom v. Chicago, M. & S. P. Ry. (Minn.), 53 N. W. Rep., 1128.) This care the jury have said by their verdict, the appellant did not exercise, and being a question of fact for their determination in the view we take of the case, it follows that, in our opinion, the judgment should be affirmed and it is so ordered.

*Affirmed.*

Writ of error refused.