CHICAGO, R. I. & G. RY. CO. v. SEARS.

(Court of Civil Appeals of Texas. Dallas.
April 5, 1913. Rehearing De-
nied April 19, 1913.)

1. CARRIERS (§ 281*)—PASSENGERS—INCOMPE-
TENT PERSONS.

Where plaintiff, an insane person, boarded
defendant's train without a caretaker, and his
condition was evident to persons observing him,
the carrier was bound to exercise a very high
degree of care to protect plaintiff from harm
while he was a passenger and to restrain him,
if necessary, to prevent him from leaving the
train before reaching his destination.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 1093–1097, 1241; Dec. Dig. §
281.*]

2. TRIAL (§ 194*)—INSTRUCTIONS—ASSUMED
FACTS—WEIGHT OF EVIDENCE.

Where the insane condition of a passenger
was evident to the carrier's servants when he
boarded the train, from which he subsequently
alighted before reaching his destination and
was injured, an instruction that the failure of
defendant's servants to restrain him constituted
negligence, instead of leaving that question to
the jury, was not objectionable as a charge on
the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 413, 436, 439–441, 446–454, 456–466;
Dec. Dig. § 194.*]

3. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF
EVIDENCE.

Where an insane passenger was permitted
to wander from the train at an intermediate
station, where he was subsequently struck by
another train and injured, an instruction that
the duty of protection imposed on a carrier to-
wards passengers must be in proportion to the
passenger's condition, and if he is physically or
mentally infirm and the carrier has notice of
such disability it must exercise the highest de-
gree of care that would be used by a very cau-
tious, prudent, and competent person to trans-
port the passenger in a safe condition, was not
erroneous as on the weight of the evidence nor
as invading the province of the jury, since,
while the standard of care remains the same,
the law requires that the amount of vigilance
be in proportion to the exigencies of the occa-
sion.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 413, 436, 439–441, 446–454, 456–466;
Dec. Dig. § 194.*]

4. APPEAL AND ERROR (§ 1068*)—INSTRUC-
TIONS—MEASURE OF DAMAGES—EXCESSIVE
VERDICT.

Where the verdict for personal injuries is
not attacked as excessive, the judgment will not
be reversed because of a confusing instruction
on the measure of damages.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig.
§ 1068.*]

5. APPEAL AND ERROR (§ 1195*)—DECISION
ON FORMER APPEAL—LAW OF CASE.

A determination on a prior appeal that the
porter of a carrier had no authority to receive
an incompetent person as a passenger was the
law of the case on retrial.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4661–4665; Dec. Dig. §
1195.*]

Appeal from District Court, Dallas County;
E. B. Muse, Judge.

Action by William Sears, by next friend,
against Chicago, Rock Island & Gulf Railway

Company. Judgment for plaintiff, and de-
fendant appeals. Affirmed.

See, also, 130 S. W. 1019.

N. H. Lassiter and Robt. Harrison, both of
Ft. Worth, and Bennett Hill and Dabney
& Townsend, all of Dallas, for appellant.
Hatton W. Sumners and Leake & Henry, all
of Dallas, for appellee.

RAINEY, C. J. This suit was filed in the
district court of Dallas county, Tex., by Wil-
liam Sears, by next friend, G. R. Sears, to
recover damages against the Chicago, Rock
Island & Gulf Railway Company, on the
allegations that on December 2, 1906, the
plaintiff, who was then temporarily of un-
sound mind, took passage over the defend-
ant's line of railway from Lawton, Okl., to
Dallas, Tex.; that it was the defendant's
duty to give him that degree of care which
was made necessary by his condition; that
he was negligently permitted by the defendant
to leave the train at Chickasha; that, while
there, his condition became worse, and he
was again placed upon a train at that point
for the purpose of completing his journey
to Dallas; that the officers of the defendant
were advised of his mental condition, and
with full knowledge of this condition they
undertook to care for him with the degree
of care made necessary by his condition;
that he was unable to take care of himself,
and it was necessary that he should be pro-
tected and restrained in order to prevent his
injuring himself; that he was negligently
permitted to escape from the train at Ring-
gold, at which place he remained until the
next day, and while there his condition was
apparent to the representatives and agents
of the company, including the station agent,
telegraph operator, and the section foreman;
that the defendant negligently failed to give
the plaintiff protection while at Ringgold;
and that he was struck by an engine of the
defendant company near the depot at that
place. It was alleged that he was seriously
injured, and that, in addition to his other
personal injuries, the temporary mental
aberration was caused to be permanent. The
defendant pleaded a general denial, and
averred that the plaintiff's injuries were the
result of his own contributory negligence,
and of the negligence of his custodian, who
placed him on the train at Chickasha, in
permitting and causing the plaintiff to em-
bark upon the said train unattended while
he was mentally unsound. Further, that it
had in force, at the time of the plaintiff's
injury, a written rule and instruction forbid-
ding its employés to accept as a passenger
any disorderly person, and that by reason of
this rule no trainman or employé had any
authority to accept the plaintiff as a passen-
ger under the circumstances alleged in the
plaintiff's petition, and if any such action

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

was taken by an employé, as was alleged in the plaintiff's petition, it was done in violation of this rule, and was without authority on the part of the employé so accepting him as a passenger. Further, it was averred that the plaintiff wás, before he undertook this journey, hopelessly and permanently insane. The case was tried on June 22, 1912, and a verdict was returned in favor of the plaintiff for the sum of $5,000, from which verdict and the judgment thereon the defendant has duly appealed to this court.

## Conclusions of Fact.

The following statement is taken principally from the brief of appellant: Wm. Sears, then 42 years of age, apparently sound mentally, left his home in Dallas, to make a visit of a few days in Lawton, Okl. While there he showed signs of mental unsoundness, and it became clear to the gentleman whom he was visiting that his mind was unbalanced. Two days after the first appearance of this mental unsoundness, he bade his host farewell and went to the depot to take passage for Dallas, and after buying his ticket became possessed of the hallucination that some of the people on the platform wanted to rob him, and he determined to remain over until the following morning. At the time he left for Dallas, he appeared to be rational, and his conversation with his host and the members of the family was intelligent. He left the train at Chickasha, and went to the postmaster, telling him that he had come for protection, that he was afraid of being attacked and robbed, and tried to hire the postmaster to accompany him home for protection. The postmaster turned him over to the chief of police, L. D. Hopkins, who took care of him for about three hours until train time, at which time he took him to the depot and put him on the train. Hopkins testified that when he put him on the train he told the porter or brakeman to take care of him, and that the porter or brakeman said he would, and that after the train had started, and by the time it had run perhaps the length of the platform, he jumped off the train. Another train was due in a few minutes, so they waited until that train came in, and Hopkins put him on this second train and says he told the porter to take care of him. At Ringgold he jumped off the train about 100 yards south of the depot about 4 o'clock in the afternoon. There is no evidence that any agent of the defendant knew that Sears got off the train at Ringgold, or that any agent at Ringgold knew that he was, or had been, a passenger on defendant's train; but a sectionman saw Sears jump off the train at Ringgold, and afterwards saw him acting strangely. He spent the night at Ringgold, being a part of the time in the depot, and indicated to observers that he was mentally unbalanced during this time. The next morning he went about two miles north of Ringgold to where the section gang was at work, and talked to them for a while, and while near them a passenger train approached, which struck him, breaking his leg and inflicting a wound on his head. Sears is now permanently and hopelessly insane, and the testimony is conflicting as to whether or not there was any hope for an improvement in his mental condition prior to the accident. The defendant's testimony was to the effect that no charge was given to any trainman with reference to the plaintiff's condition, and that none of the trainmen knew anything about his being mentally unbalanced. Sears was in a badly insane condition during the time he was at Chickasha, and this fact was noticeable to any one observing him. The representatives of the railway company, at Ringgold, including the station agent, telegraph operator, and three section foremen, knew that Sears was insane and unable to take care of himself. The helpless condition of Sears was observed by all persons with whom he came in contact. On the train between Chickasha and Ringgold, and while Sears was at Ringgold, wandering about the railroad tracks, up to the time he was hurt, nothing was done in any way to protect him from injury, although trains were constantly passing and repassing on the line of defendant through the Ringgold station.

## Conclusions of Law.

The first assignment of error is: "The court erred in that portion of its charge to the jury wherein it instructed them as follows: 'Now, if you find and believe from the evidence that William Sears, the plaintiff in this case, when in a condition of unsound mind, was a passenger on a train of the defendant, and that his mental condition was such that it was reasonably probable that, if left unrestrained to follow his own course, it would result in physical harm and injury, either to others or to himself; and the defendant or its agents or employés charged with the duty of looking after the safety of its passengers had notice or knowledge of such mental condition on the part of William Sears, and failed to exercise the high degree of care that would be exercised by a very cautious, prudent, and competent person under similar circumstances to restrain the said William Sears and to keep him in safety, and through the failure, if any, of the defendant, or its agents or employés, to exercise such degree of care, the said William Sears was permitted to leave, and did leave, the train of defendant at or about the station at Ringgold, Tex., and as the proximate result of being thus permitted to place himself at large, or as the proximate result of the agents or employés of the defendant at Ringgold failing, if they did fail, to exercise the care of ordinary prudent persons to prevent the plaintiff from going upon the track

of the defendant at Ringgold, under the circumstances in which he did, if you find that they had knowledge of his demented condition, if he was in a demented condition, or as the direct and proximate result of both such causes united, the plaintiff was run upon by an engine of the defendant and received personal injuries as alleged in his petition, then you will return a verdict in favor of the plaintiff'—as set up in paragraph 45 of the defendant's amended motion for a new trial." The proposition submitted under this assignment by appellant is: "The charge is upon the weight of the evidence, and invades the province of the jury in assuming that it was the defendant's duty upon the conditions stated to exercise the high degree of care that would be exercised by a very cautious, prudent, and competent person under similar circumstances to restrain the plaintiff. It was for the jury, and not for the court, to determine whether, under the circumstances, a cautious, prudent, and competent person in the exercise of a high degree of care would have restrained or attempted to restrain the plaintiff."

[1] The condition of William Sears when received by the company was such as required a very high degree of care on the part of appellant to protect him from harm while he was a passenger. It was appellant's duty to look after and watch him to prevent his leaving the train, and if necessary in the exercise of that degree of care to *restrain* him from so doing. This was the measure of appellant's duty, and we see no error in the court so telling the jury. If it was probable that injury would result to him or to others by reason of his leaving the train, then the only practical way, we think, for the servants of appellant to exercise that care, was to restrain or prevent him from leaving the train. It may not have been necessary to have used force for that purpose, but that end could doubtless have been accomplished by persuasion as he was not violent.

[2] Ordinarily, it is error for the court to charge the jury that certain facts constitute negligence per se, unless the act has been made negligent by the statute; but in this; as with all general rules, there are exceptions, as said by Mr. Justice Gaines, speaking for the court in Railway Co. v. Gasscamp, 69 Tex. 545, 7 S. W. 227: "According to the rule in this court, in order that an act shall be negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say without hesitation or doubt that no careful person would have committed it." So, in this case, if the appellant's servants knew of Sears' condition, and the jury, by their verdict, have found that they did, we think it clearly appears from the evidence that common prudence dictated that Sears should have been restrained, and the charge of the court was not error. In any event, the servants, as shown by the

evidence, used no care to prevent his leaving the train, and we are unable to see that the use of the word "restraint," as used in the charge, under the evidence could possibly have been prejudicial to the appellant.

[3] The second assignment of error is: "The court erred in that portion of its charge to the jury wherein it instructed them as follows: 'The duty of protection which the law imposes upon the carrier toward the passenger must also be in proportion to the passenger's condition, as, if he is physically or mentally infirm and the carrier has notice of such disability, if any, it must exercise the high degree of care and prudence that would be used by a very cautious, prudent, and competent person to transport the passenger safely to his destination in view of his infirm condition'—as set up in paragraph 42 of the defendant's amended motion for a new trial." The criticism is as follows: "The charge is upon the weight of the evidence, and invades the province of the jury in stating that the duty of protection which the law imposes upon the carrier toward the passenger must be in proportion to the passenger's condition."

This charge is not on the weight of the testimony, nor does it invade the province of the jury in telling them the duty owing by the appellant to invalid and helpless passengers. While the standard of care remains the same, the law requires the amount of vigilance to be proportioned to the necessities and exigencies of the occasion. Railway Co. v. Smith, 87 Tex. 348, 28 S. W. 520; Railway Co. v. Welch, 86 Tex. 203, 24 S. W. 390, 40 Am. St. Rep. 829; Railway Co. v. Keeling, 102 Tex. 521, 120 S. W. 847; Railway Co. v. Coopwood, 96 S. W. 102; Railway Co. v. Redeker, 45 Tex. Civ. App. 312, 100 S. W. 362. Appellee was a helpless passenger on appellant's train, and the court in its charge only told the jury the principle of law required in such a case, and in this there was no error.

[4] The third assignment complains of the court's charge on the measure of damages. This charge is a little confusing, but we think it becomes harmless, as there is no assignment complaining of the amount of the verdict, as the verdict is not attacked as being excessive, and if the charge is error it will not be cause for reversal of the judgment.

[5] The contention is made that the porter had no authority to receive Sears as a passenger and the company is not bound by such act in receiving him in his then condition. This question was considered by us on the former appeal and we adhere to our former holding. Railway Co. v. Sears, 130 S. W. 1019.

Appellant presents other assignments of error, and we have considered them all; but none in our opinion point out reversible error. The court correctly submitted to the jury all controverted issues and gave all

special charges where applicable and not covered by the main charge, and where charges were refused and were not covered by the main charge there was no error in the refusal thereof.

The evidence, we think, fully supports the judgment, and it is affirmed.