CHICAGO, R. I. & G. RY. CO. v. SEARS. (No. 11–2576.)

(Commission of Appeals of Texas, Section A. April 2, 1919.)

1. CARRIERS ⬉236(1) — DUTY TO RECEIVE MENTALLY INCOMPETENT PASSENGER.

A carrier is' not required to accept as a passenger one without an attendant who is mentally incapable of caring for himself.

2. CARRIERS ⬉281 — MENTALLY INCOMPETENT PASSENGER—DUTY TOWARD.

Where passenger without attendant is men-·tally incapable of taking ·care of himself, carrier with knowledge thereof is required to exercise such care; in· addition· to that given ·the ordinary passenger as may be reasonably necessary for his safety, considering the conduct and disposition of mind manifested by the passenger.

3. CARRIERS ⬉281—MENTALLY INCOMPETENT PASSENGER—DUTY TOWARD.

Where passenger's mental disability is not observable, and carrier has no knowledge thereof, no added duty of caring for such passenger is imposed upon carrier.

4. CARRIERS ⬉281 — INCOMPETENT PASSENGER—NOTICE TO TRAINMEN.

Where the only information possessed by trainmen of passenger's abnormal mental condition was that he was laboring under a delusion that some one wanted to kill or rob him, and passenger was otherwise apparently sane, there being nothing in his manner to indicate that he was dangerous to other passengers or that he was likely to injure himself, trainmen could not anticipate that he would leave train while it was in motion or that he would thereafter vol-·untarily injure himself.

5. NEGLIGENCE ⬉59—"ACTIONABLE NEGLIGENCE."

To constitute "actionable negligence," the injury must be a natural 'and probable consequence of· the negligence complained of, and must be such that it should have been foreseen in the light of attending circumstances.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Actionable Negligence.]

6. CARRIERS ⬉247(1) — PASSENGER OR TRESPASSER.

Where passenger jumped off 'train during afternoon of one day and was killed by train during following day while on track, he was not a passenger at the time of his injury, but merely a trespasser.

7. CARRIERS ⬉283(2)—INCOMPETENT PASSENGER—DUTY OF EMPLOYÉS—SCOPE OF EMPLOYMENT.

Negligence of railroad for failure to care for mentally incompetent passenger could not be predicated upon failure of station agent, telegraph operator, and section hands, who had knowledge of such condition, to protect passenger from injury or report his condition to the company, the knowledge of such employés not being imputable to company, inasmuch as it was not their duty to make such report to the company.

8. PRINCIPAL AND AGENT ⬉178(1)—IMPUTED KNOWLEDGE—SCOPE OF AUTHORITY.

The knowledge of an agent, to be imputed to principal, must affect some matter .within the scope of the agent's authority.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by William Sears, by next friend, against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff affirmed by Court of Civil Appeals (155 S. W. 1003), and defendant brings error. Re-

versed, and judgment rendered for defendant.

Lassiter, Harrison & Rowland, of Ft. Worth, and Bennett Hill and Dabney & Townsend, all of Dallas, for plaintiff in error.

H. W. Summers and Leake & Henry, all of Dallas, for defendant in error.

STRONG, J. This is an action by William Sears, by next friend, against the Chicago, Rock Island & Gulf Railway Company to recover damages for personal injuries alleged to have been received through the negligence of defendant company. The case has been twice tried. The first trial resulted in a judgment in favor of plaintiff, which was reversed by the Court of Civil Appeals. 130 S. W. 1019. Upon the second trial plaintiff again recovered judgment, which was affirmed. 155 S. W. 1003.

The facts upon which the recovery is based are thus stated by the Court of Civil Appeals in their findings:

"Wm. Sears, then 42 years of age, apparently sound mentally, left his home in Dallas to make a visit of a few days in Lawton, Okl. While there he showed signs of mental unsoundness, and it became clear to the gentleman whom he was visiting that his mind was unbalanced. Two days after the first appearance of this mental unsoundness, he bade his host farewell and went to the depot to take passage for Dallas, and after buying his ticket became possessed of the hallucination that some of the people on the platform wanted to rob him, and he determined to remain over until the following morning. At the time he left for Dallas, he appeared to be rational, and his conversation with his host and the members of the family was intelligent. He left the train at Chickasha, and went to the postmaster, telling him that he had come for protection, that he was afraid of being attacked and robbed, and tried to hire the postmaster to accompany him home for protection. The postmaster turned him over to the chief of police, L. D. Hopkins, who took care of him for about three hours until train time, at which time he took him to the depot and put him on the train. Hopkins testified that when he put him on the train he told the porter or brakeman to take care of him, and that the porter or brakeman said he would, and that after the train had started, and by the time it had run perhaps the length of the platform, he jumped off the train. Another train was due in a few minutes, so they waited until that train came in and Hopkins put him on this second train and says he told the porter to take care of him. At Ringgold he jumped off the train about 100 yards south of the depot about 4 o'clock in the afternoon. There is no evidence that any agent of the defendant knew that Sears got off the train at Ringgold, or that any agent at Ringgold knew that he was, or had been, a passenger on defendant's train; but a section man saw Sears jump off the train at Ringgold, and afterwards saw him acting strangely. He spent the night at Ringgold, being a part of the time in the depot, and indicated to observers that he was mentally unbalanced during this time. The next morning he went about 2 miles north of Ringgold to where the section gang was at work, and talked to them for a while, and while near them a passenger train approached, which struck him, breaking his leg and inflicting a wound on his head. Sears is now permanently and hopelessly insane, and the testimony is conflicting as to whether or not there was any hope for an improvement in his mental condition prior to the accident. The defendant's testimony was to the effect that no charge was given to any trainman with reference to the plaintiff's condition, and that none of the trainmen knew anything about his being mentally unbalanced. Sears was in a badly insane condition during the time he was at Chickasha, and this fact was noticeable to any one observing him. The representatives of the railway company, at Ringgold, including the station agent, telegraph operator, and three section foremen, knew that Sears was insane and unable to take care of himself. The helpless condition of Sears was observed by all persons with whom he came in contact. On the train between Chickasha and Ringgold, and while Sears was at Ringgold, wandering about the railroad tracks, up to the time he was hurt, nothing was done in any way to protect him from injury, although trains were constantly passing and repassing on the line of defendant through the Ringgold station."

In addition to the foregoing facts, we think it conclusively appears from the record that plaintiff voluntarily placed himself on the track in front of the moving train for the purpose of permitting it to strike him.

The plaintiff in his petition alleged the facts substantially in accordance with the foregoing findings of the Court of Civil Appeals. The grounds of negligence relied upon were: First, that the servants in charge of the train, although being informed of plaintiff's mental condition at the time he was accepted as a passenger, negligently permitted him to leave the train before reaching his destination; and, second, that while at Ringgold plaintiff's mental condition was apparent to the representatives and agents of defendant at that place, and they negligently failed to protect him from injury.

[1-3] The principal questions presented by the record are whether, under the evidence, defendant company was guilty of negligence in failing to prevent plaintiff from leaving the train before he reached his destination, and, if so, was such negligence the proximate cause of his injuries. The answers to these questions depend upon the character of the plaintiff's mental derangement and the knowledge thereof possessed by defendant's servants in charge of the train. A carrier is not required to accept as a passenger one without an attendant who is mentally incapable of caring for himself, but, if such person be accepted as a passenger with knowledge of his condition, or if such knowledge be acquired after he becomes a passenger, the carrier owes him a duty to

exercise such care as may be reasonably necessary for his safety. The carrier must bestow upon a passenger in such condition any special care and attention in addition to that given the ordinary passenger which reasonable prudence and foresight demand for his safety, considering the conduct and disposition of mind manifested by the passenger or any conduct or disposition which might be reasonably anticipated from one in his mental condition. The additional care in such case, however, is measured by the knowledge which the carrier has, or should obtain by observation, of the passenger's incapacitated condition. If the carrier has no notice of such condition, and it is not observable, no added duty is imposed.

[4] Viewing the testimony in the most favorable light for plaintiff, the only information to servants in charge of the train had as to Sears' mental condition was that he was laboring under the delusion that some one wanted to kill or rob him. Otherwise he was apparently sane. There was nothing in his manner to indicate that he was dangerous to other passengers or that he was likely to injure himself. He seemed to be rational and conscious of the nature of his acts and of what was taking place. He knew where he lived and expressed a keen desire to be carried home. There is evidence that the porter knew that he left the train the previous day, before reaching his destination, but it is not shown that he evidenced any desire on that occasion to leave the train while in motion. Prior to the time of his injury he had given no indication of a desire to voluntarily injure himself; on the other hand, his mental attitude was that of a person seeking to avoid injury. Under such circumstances, in our opinion, the servants in charge of the train could not anticipate either that Sears would leave the train while it was in motion or that he would thereafter voluntarily injure himself.

[5] To constitute actionable negligence, the injury must be a natural and probable consequence of the negligence complained of, and must be such that it should have been foreseen in the light of the attending circumstances. Railway v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Scheffer v. Railway, 105 U. S. 249, 26 L. Ed. 1070; Railway v. Bigham, 90 Tex. 223, 38 S. W. 162; Seale v. Railway, 65 Tex. 274, 57 Am. Rep. 602; Railway v. Adams (Civ. App.) 163 S. W. 1029.

In the Adams Case, supra, in which a writ of error was denied by the Supreme Court, a passenger, while suffering from the delusion that there were robbers on the train, jumped from the train while in motion and was injured. The Court of Civil Appeals for the Fifth District held the carrier not liable for failure to restrain or guard the passenger, saying:

"We think it may be safely said that, although a passenger may be suffering with the delusion, as was appellee, that there were robbers on the train, yet, if there is nothing in her actions to indicate that she is dangerous or obnoxious to other passengers, or liable to do violence to herself, a carrier cannot be held liable for failure to restrain or guard such passenger."

The only conclusion to be drawn from the evidence is that Sears voluntarily placed himself in front of the moving train. There is no evidence tending to show that he was injured by reason of being permitted to leave the train at a dangerous place or under dangerous conditions. The only danger to which he was subjected was the danger of voluntarily injuring himself. He probably would have been subjected to this danger if he had been carried to his destination, or if he had never taken passage on the train. His own voluntary act, which could not have been foreseen "in the light of the attending circumstances," was the proximate cause of his injury.

[6-8] The remaining ground of negligence relied upon to sustain the judgment is that the employés of defendant at Ringgold, knowing plaintiff's mental condition, failed to protect him from injury. Having left the train voluntarily, under the circumstances shown by the evidence, plaintiff was not a passenger at the time of his injury. He was a mere trespasser. It is not contended that the employés operating the train that injured plaintiff knew his mental condition. The station agent, telegraph operator, and section hands at Ringgold knew his condition, but it was not in the line of their duty to either protect plaintiff from injury or to report his condition to the company. Negligence on the part of defendant could not therefore be predicated upon their failure to do so. It is well established that the knowledge of an agent, to be imputed to the company, must affect some matter within the scope of the agent's authority. It must be a part of the agent's duty either to act upon the information himself, or to report it to others for action. Korn v. Railway Co., 125 Fed. 897, 62 C. C. A. 417, 63 L. R. A. 872.

We are of opinion that the evidence fails to show actionable negligence. As the case seems to have been fully developed upon the trial, we recommend that the judgment of the Court of Civil Appeals and that of the trial court be reversed, and judgment rendered for plaintiff in error.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.