### MISSOURI PACIFIC RAILWAY COMPANY v. W. J. LONG.

No. 7114.

1.    **Care by Railway Company for Safety of Passengers.** — A railway company has not discharged its whole duty to the passenger when it has provided a safe exit from its cars while at the same time there exists another way which is not safe and which is in such general use by its passengers as to induce the belief that it was permitted in part at least for that purpose.   See example.

2.    **Same.**—When the servants of a railway company see that its passengers are in the habit of leaving its cars by a door not provided for the purpose it would seem to be their duty to warn such passengers that there is another door, which they are expected to use, provided for such exit.

3.    **Contributory Negligence.**—See testimony held sufficient to negative contributory negligence in a passenger injured in stepping from a baggage car to a platform in the night-time, and falling between the car and the platform.

4.    **Care by Passenger.**—That a passenger may have been familiar with the construction of cars, and that the injury occurred by the passenger falling while attempting to step from the side door of a baggage car in his egress from the car (when a safer mode of egress was provided by a door in the end of the car for such purpose) will not authorize the court to charge that such egress in the night-time was negligence on part of the injured passenger.

APPEAL from Bell.    Tried below before Hon. W. A. Blackburn.

This is an appeal from a judgment in favor of Long for $1500 for personal injuries suffered by falling between the side door of a baggage car and the platform while attempting to step from the car to the platform.    The plaintiff was well acquainted with the surroundings.    The accident, however, was in the night-time.

*R. C. Foster* and *A. E. Wilkinson,* for appellant.—The verdict of the jury was contrary to the evidence in this, that the uncontradicted evidence showed that plaintiff was injured by his own negligence and voluntary act in choosing a means of exit from the car obviously not prepared by defendant for that purpose, and in failing to exercise any care whatever to avoid a slight danger incident to such way of exit, which was known to him and could have been avoided by the use of the slightest attention and care upon his part, and the court erred in refusing to grant a new trial upon this ground.    Thomp. on Carr., p. 269; Gonzales v. Railway, 38 N. Y., 440; Same Case, 50 How. Prac.

Rep., 407; Railway v. Zebe, 33 Pa. St., 318; Beach on Con. Neg., p. 40; Railway v. Whitacre, 35 Ohio St., 627; Bruker v. Town of Covington, 66 Ind., 33; Railway v. Murphy, 46 Texas, 356; Railway v. Spicker, 61 Texas, 427; Railway v. Davidson, 61 Texas, 203.

*Harris & Saunders,* for appellee.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by appellee against appellant to recover damages for personal injuries. The accident occurred at Echo, the point of junction between the defendant's main line and a branch road operated by it which extended to Belton. The facts of the case as shown by the testimony are accurately stated in the brief for appellant as follows:

"Plaintiff took passage on one of defendant's trains, * * * leaving Belton about 11.30 p. m. They arrived at Echo, a station where the Belton tap road connects with defendant's main line, about 12 or 1 o'clock a. m. The train lay at Echo some three hours till the arrival of the south-bound train on the main line, on which plaintiff was to take passage. The train on which plaintiff was riding from Belton to Echo was a mixed one, consisting of freight cars with a coach at the rear.

"This coach was what is known as a combination car, having at the front end a compartment for baggage and express matter with a wide door in the side for receiving it from and unloading it upon the depot platforms, while the rear part was fitted with seats for passengers, with the ordinary door, platform, and steps at the end, such as is usual on passenger coaches.

"The train was brought to a stop at the depot platform at Echo in the position customary for that train on the west side of the station. The depot was surrounded by a platform about the level of the main track on the east side and sloped upward toward the west side, where it was about five feet high next to the track on which plaintiff's train stood and about even with the sill of the door on the side of the baggage compartment. There was a low platform on the south of this depot platform connected with it by a flight of steps and designed for passengers boarding or leaving the car, as the high platform was for the receiving or loading of baggage, express, and freight. The car in which plaintiff was riding stopped, as it always did, in such position that the side door in the baggage compartment was opposite the high platform, and the rear platform and steps of the passenger compartment were opposite the low platform provided for passengers.

"Plaintiff remained upon the car until the arrival of the south-bound train, as did most of the passengers, without objection on the part of defendant's employés. When the train whistled the passengers got up and went out of the car, plaintiff last, carrying a large can in one hand

and a cake in the other, and followed by the conductor, who carried a lantern.

"Plaintiff passed through the door into the baggage compartment, and in stepping from the side door of the car, between which and the edge of the platform there was a space of seventeen inches, stepped into this open space and fell, striking his side against the platform and receiving serious injuries.

"Passengers had generally followed this course in leaving the car. There had been some effort made at previous times to prevent them from going this way and compel them to go down the steps in the rear, but it was found difficult to do so and the trainmen had ceased to attempt it. Plaintiff had traveled over the road before and had always gone in and out by this door and had seen others do the same. * * * The conductor testified that he followed behind plaintiff as he went out, with a lantern.

"Plaintiff testified that he had traveled over the road a good many times, and always left the car by this door (the side door of the baggage car). It was a dark starlight night, and his recollection was that there were no lights about the door at which they went out, and it was too dark for him to see where he was stepping. As to his fall he testified: 'It was too dark for me to see where I was stepping, and as I passed out of the door, not seeing the opening or knowing it was there, and supposing that I was stepping onto the platform I stepped into the opening and fell on my right side and arm against the edge of the depot platform.'

"Charles Townsend, the conductor of the train, testified that the train laid at Echo that night about three and one-half hours before the north-bound train on the main line arrived. Witness called out 'Echo! Change cars.' Plaintiff did not then get off the car. He had two seats turned opposite, and laid down with a pillow and went to sleep on the car. The rear door was not locked, and there was nothing to prevent passengers getting out that way. Witness went into the coach and laid down near the south or rear door until the approaching train whistled. The passengers all went out, passing through the baggage compartment and stepping from that to the platform, plaintiff last, followed by witness, holding a lantern. Plaintiff went out through the baggage room and put one foot upon the sill of the baggage car and felt with the other for the edge of the platform, but did not get his foot far enough upon it. He just got his toe on the edge of the platform, and when he stepped forward his foot slipped and he fell."

The night of the accident was clear, but as to the question whether the moon was shining or not the evidence was conflicting. There was also a conflict as to the question whether or not there was a light upon the platform. The evidence upon the point was not very satisfactory either way. Several witnesses testified that they had frequently trav--

eled on the car in question, and that the passengers were accustomed to go out through the side door, and that they did not recollect having seen any passengers leave the train by any other door. The conductor also testified that he had at first attempted to prevent passengers from going out by the side door, but that the attempt had been fruitless, and that for some time before the accident he had ceased to forbid it.

Was the evidence sufficient to support the verdict? It was claimed that it was not, upon two grounds: first, because it was shown that the defendant had provided a safe way for the exit of its passengers and therefore was not guilty of negligence; and second, for the reason that but for the plaintiff's own negligence in stepping off the car the accident would not have occurred.

If the plaintiff had sought a recovery on account of the failure of the defendant to provide a safe way of egress from its car, the first ground upon which the verdict was sought to be set aside should have been sustained. The evidence showed there was a safe way provided by the company, by taking which the accident might have been avoided. But such was not the basis of the action. The plaintiff did not seek to recover because there was not a safe way, but upon the ground that there was another way which under the circumstances was not safe, and which by reason of the conduct of the servants of the company in permitting its general use by passengers he was led to believe was provided for their use.

Was the evidence sufficient to sustain the case which the plaintiff sought to make? At the time of the accident he was still a passenger, and in regard to passengers the law requires of carriers the highest degree of care. Whether such care had been used or not was a question for the jury, and we think the evidence was sufficient to warrant them in finding that issue in the negative. They may have concluded that more care could have been used, that better lights could have been provided, or that some appliance to bridge the interval between the car and platform would have avoided the injury, and that without either the one or the other there did not exist that perfect safety which the law requires in such cases.

Now it may be that when a railway company has provided a safe way of egress from its cars, and a passenger knows it, he will not be held without fault in taking another merely because other passengers do so and the servants of the company do not forbid it. But it does not follow that because a safe way is provided a passenger is bound at his peril to ascertain the fact and to avail himself of that way when he sees that another way apparently safe is in general use by the passengers with the tacit permission of the servants of the company. Such use and such permission are calculated to induce the belief that the way is provided in part at least for the egress of passengers, and that a passenger is expected to make use of it should he elect to do so. Under

such circumstances a man of ordinary prudence might avail himself of such a plan of exit, and therefore it can not be declared as a matter of law that it is negligent to do so.  The question would be for the jury.  On the other hand, can it be announced as a legal conclusion that a railway company has discharged its whole duty to the passenger when it has provided a safe exit from its cars, while at the same time there exists another way which is not safe and which is in such general use by its passengers as to induce the belief that it was provided in part at least for that purpose?  We think not.  A railway company, it is true, is not bound to see that its passengers act in a prudent manner or to use physical means to compel them to do so.  But when its servants see that its passengers are in the habit of leaving its cars by a door not provided for the purpose, it would seem to be the duty of such servants at least to warn them that there is another door which they are expected to use.  In this case there was testimony sufficient to warrant the jury in concluding that the side door was almost exclusively used by the passengers in making their egress from the car; and we can not hold that there was not evidence to justify the findings that that way of egress was not safe for passengers, and that it was negligence on the part of the company to permit it to be used as such.

We are also of the opinion that the court did not err in holding that the jury were warranted in finding that the defendant was not guilty of contributory negligence in stepping off the train.  It would be difficult to resist the conclusion that there was a want of due care if the accident had occurred in the daytime.  But it was night, and if the jury believed that there was not sufficient light, as there was testimony to justify them in believing, we can not say that their verdict upon this issue was without evidence to support it.  The conductor's testimony that the plaintiff "put one foot on the sill of the baggage car and felt with the other for the edge of the platform, but did not get his foot far enough upon it," tends to show not only that the edge of the platform could not be seen, but also that the plaintiff exercised care in trying to avoid danger.  The plaintiff testified that he could not see the platform and thought he was stepping upon it.  Assuredly his conduct was not so clearly negligent as to warrant us in setting aside the verdict upon that ground.

The appellant also complains that the court erred in refusing to give the following special charge: "If you believe that defendant provided for the use of passengers boarding or alighting from its trains a platform and steps and door in the end of the car of the usual form used on passenger coaches, but that the plaintiff, being familiar with the structure of its car and platform, chose to leave the car by passing through the compartment provided for baggage, express, and mail, and stepping from the side door of the baggage car upon the depot platform because the same was a nearer and more convenient way

and more frequently used by the public, plaintiff by adopting such means of getting off the car assumed the risk incident in stepping across the open space between the coach and the platform, and if injured under these circumstances by inadvertently stepping into instead of across such opening, he can not recover."

For two reasons we think the charge was properly refused. Before the plaintiff could be held responsible under the peculiar facts of this case for attempting to pass out by the side door, he must in our opinion have known that the end door was provided for the egress of passengers and that by the rules of the company they were expected to use the latter door. From the fact that he knew of the construction of the car and was familiar with the construction of the doors of ordinary passenger coaches, the jury would have been at liberty to infer that he knew the purpose for which the end door was provided; but this could not properly be assumed as a matter of law. Then again, even if he knew that the end door was intended for the use of passengers in entering and leaving the car, it would not follow necessarily that he was at fault in failing to avail himself of it, when the use of the side door was such as may have evidenced the belief that it was also intended for the same purpose.

The proposition announced in the charge of the court that it was the duty of the defendant company "to keep in a safe condition all portions of its platforms and approaches thereto," is not strictly correct as broadly stated. But under the facts of this case the jury could not have been misled. There was no evidence tending in the slightest degree to show that there was any faulty construction except in the relation between the side door and the platform which was opposite to it, and the jury could not have understood the instruction as referring to any other. As applied to the facts it could hardly be deemed error, but if error it was harmless. The charge as a whole very fairly and pointedly presented the issues in the case.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered June 2, 1891.