INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY v. CLAR-
ENCE E. MOORE.

Delivered April 28, 1897.

**Railway Company—Fellow Servants—Injury to Brakeman Through Neg-
ligence of Engineer.**

A brakeman on a moving freight train went forward to the engine to obtain
directions from the engineer, and while on the engine it was derailed and he was
injured. Had the engineer given the proper danger signals, the brakeman would not
have gone to the engine, and had he not gone there, he would not have been injured.
The rule of the company made it the duty of the brakemen to take their directions
and orders from the conductor, but as a matter of convenience they often got them
from the engineer. *Held,* that as the engineer had no right of authority and control
over the brakeman, they were fellow servants, and the defendant company was not
liable for the injury.

APPEAL from Galveston. Tried below before Hon. WILLIAM H.
STEWART.

*Davidson & Minor,* for appellant.—The court erred in not directing a
verdict for the defendant, and in rendering judgment for the plaintiff,
because the verdict is without evidence to support it—there being no
evidence that the engineer was the defendant's vice principal, and all the
evidence showing that the engineer and plaintiff were fellow-servants.
Railway v. Frazier, 36 S. W. Rep., 432; Railway v. Warner, 35 S. W.
Rep., 364; Railway v. Hanney, 5 Am. and Eng. R. R. Cas., 533; Rail-
way v. Lewis, 33 Ohio St., 196; Railway v. Camp, 65 Fed. Rep., 953; Ran-
dall v. Railway, 109 U. S., 478; Steamship Co. v. Merchant, 133 U. S.,
375; Railway v. Hambly, 154 U. S., 349.

*Lovejoy & Sampson* and *Perryman & Bullitt,* for appellee.—1. As to
who are fellow-servants is a question of fact, and if there was any evi-
dence going to establish that the engineer and appellee were not fellow-
servants, there was no error in submitting this question to the jury, and
there was evidence introduced upon the trial of the case going to show
that they were not fellow-servants. 7 Am. and Eng. Encyc. of Law, 835;
Railway v. Collins, 1 S. W. Rep., 883; Railway v. Moore, 24 Am. and
Eng. R. R. Cas., 443; Cowles v. Railway, 2 Am. and Eng. R. R. Cas., 90.
2. Although the employer may establish and promulgate rules, if
he suffers these rules to be habitually disobeyed, they are of no effect.
Fray v. Railway, 30 Minn., 234; Hays v. Bush Mfg. Co., 41 Hun, 407.

PLEASANTS, ASSOCIATE JUSTICE.—This is an appeal from a judg-
ment rendered by the District Court of Galveston County in favor of
appellee for $3700 damages for personal injuries sustained while em-
ployed as brakeman upon appellant's road, through the alleged negli-
gence of the engineer of the train.

The appellee was head brakeman upon a freight train of appellant.
The train, just after it had passed over a descending grade, and but a

short distance from the foot of the grade, and just after the front brakes, but before the rear brakes, and those attached to the hindermost car, had been released, collided with a cow, and by the collision the engine was forced from the rails upon the ties, and after running for some distance over the ties was thrown entirely upon the roadbed and was capsized, and thereby the appellee, who was upon the engine at the time and unable to escape therefrom, was injured. The engineer and fireman escaped injury by leaping from the engine before it was overturned. The appellee, after releasing the brakes, which he had applied to the train when it reached the descending grade, went forward, passing over some five or six intervening cars, to the engine, and did not know or suspect that there was anything wrong with the train, he says, until he stepped upon the engine, when, by its motion, he immediately discovered that it was off the rails and running across the ties; and in an effort to leap from the train, one of his feet was caught between the engine and tank, and he was held fast until the engine was capsized. No danger signal was given by the engineer, as is usual when cattle are discovered upon the track in front of the train, though appellee admits he saw the animal upon the track, but he says he did not know when he started forward that the train had struck the animal. He supposed, from the fact that the engineer did not give the danger signal, all was well with the train, otherwise he would not have gone on the engine; that he was misled by the failure of the engineer to signal for the brakes.

The engineer, while in the window of the engine from which he leaped from the train, saw the appellee, and states there was nothing to obstruct the view of the latter; and to the same effect is the testimony of the fireman. Appellee states that there was a heavy volume of smoke blowing low over the train in front of him, which obstructed his vision as he was approaching the engine. Appellee had been following the vocation of a brakeman since 1889, but had been in the employment of the appellant only about one month at the time of his injury, and was not familiar with the road or the stations thereon; and as the conductor and the engineer, as he says, but the fact is denied by them, had received instructions or orders in reference to the running of the train, at the station last passed before the accident, his purpose in going on the engine, after releasing the brakes, was to inquire of the engineer what their instructions were. Appellee says he was working for appellant under the rules promulgated by it, and which were in force at the time of his injury. These rules, among other things, declare:

"(1) That all trains are run under the direction of the conductors, except when their directions conflict with the rules, or involve risk, in which case the engineer will be held equally responsible. (2) That freight conductors will be held responsible for the faithful performance of duty required on the part of their brakemen. (3) Conductors of all trains, when approaching a meeting point where they are to take the siding, must go to the forward part of the train and attend to the switch in person. Upon leaving the siding they must set up the switch for the

main track, in person, and such duty conductors can not assign to any-one, but must perform it in person in every instance. (4) Engineers having for any cause to stop between stations, or at any place where flag-men should be sent to protect rear end of train, must, before stopping, signal flagman out by giving five short blasts of the whistle, and before starting again, must call flagman in by four long blasts of the whistle."

From these rules it would seem that all of the train men, including the engineer, are subject to the order of the conductor while running the train; and the engineer is under obligations, as are all of the other members of the train crew, to obey the conductor, unless his orders are in violation of the rules of the company, or unless they involve risk. And it appears that there is no rule of the company which gives author-ity to the engineer of the train to superintend, control, command, or direct either of the brakemen. The appellee, however, testified in sub-stance that when the train was running the engineer had, in his opin-ion, equal control and authority with the conductor over the brakemen; and that the engineer did give orders to the brakemen, and that it was the duty of the latter to obey the orders of the engineer; but in this he was contradicted by both the engineer and conductor, who declared that the engineer had no authority to superintend, command, order, or direct the brakemen.

The appellee testified further, that in going forward to ask the en-gineer if he had any orders for him, he was acting under the rules of the company, and he believed he was discharging his duty in so doing; but appellee admitted that if he had remained upon the cars, if the engineer had had any instructions or orders to give him, he would have signaled him to come to the engine. Again, the appellee testified: "When the train is running, it is the duty of the conductor to direct the train crew when he can get close enough to them; if not, it devolves upon the en-gineer to direct the train men in the performance of their duties. I do not know whether the rules of the defendant company touch upon that point, but it is the custom upon every road I ever worked upon." In answer to counsel for defendant, appellee admitted that at the time of the accident by which he was injured, a rule of the defendant company declared that all trains should be run under the direction of the conduc-tors, except when their orders conflicted with the rules or involve risk.

The conductor testified for defendant, that the duties of the fore-brakeman did not require him to go upon the engine, unless called there by signal from the engineer; and he further testified that the engineer did not have the superintendence or the control of either brakeman, nor did he have the authority to order or direct either brakeman. The other brakeman, J. S. Wilson, testified that there was no duty upon the head brakeman requiring him to leave his brakes on top of the cars to go to the engine to learn his duties from the engineer; that it was his duty to inquire of the conductor as to his duties. That the engineer gave or-ders by signals when he is running the train. The engineer may tell the brakeman to open switches, and when he tells us we obey him, but

we are not under duty to obey him. When I am head brakeman and have a long train, and the conductor is back in the caboose, and the rear brakeman also, and I am within a car's length of the engineer, I take my orders from him, as he has the same running orders as the conductor; and if the engineer tells me to open a switch to let him pass on the sidetrack, I do it; but it is not my duty to do it.

Shubert, the fireman, testified that the conductor had the control and direction of the train crew. "The brakeman has no duty to perform that I know of on the engine. I do not know that it is customary for the head brakeman to ride on the engine, but I know they do ride on the engine; most of the time the head brakeman is on the engine; and he very often goes to the engineer to get instructions as to what switches to open, and as to what to do when the train is going to a siding; the engineer tells him when to throw the switch, and the rear brakeman gets his instructions from the conductor, and that is the way they run the train. The engineer and conductor get the same instructions and orders as to running the trains, and where they will meet other trains, and at what sidings to stop. I do not know whether the rules of the company require the front brakeman to step on the engine and get his instructions from the engineer, but generally the front brakeman is on the engine, and if he does not know himself what siding the train is to take the engineer tells him, and when the train reaches the siding the brakeman gets off and opens the switch. Some brakemen have time cards and know at what points the trains will meet, and others go into the office and get orders before they come to the meeting place."

The engineer testified: "The control and direction of the train is with the conductor. I am under the conductor's orders until he goes to disobeying the rules, and then I take charge; but until the conductor does something contrary to the rules he is the superior officer. The conductor has charge of the brakemen. The brakemen, when out on the road, must look to the conductor for instructions, and it is not the duty of the head brakeman, or any brakeman, to leave his brakes and go to the engineer for directions. The plaintiff had no duty to perform whatever on the engine. The conductor generally tells the brakeman as to his duties with respect to taking sidings. Some of the brakemen do not go back to the conductor, but come over to the engine, and ask the engineer where they are going to meet a train. It is the duty of the brakeman to apply to the conductor for instructions. Many head brakemen, when they get well acquainted with the road, to save the trouble of going back to the caboose, are in the habit of stepping over into the cab and asking the engineer for instructions about meeting a train, and when to throw switches, and what sidings to enter. The engineer has the same running orders as the conductor, and gives the information to the brakeman, and he acts upon it. It is the custom and habit of the head brakeman to go into the cab and get his instructions from the engineer. Half the time the brakemen are in the office when we get our instructions as to running the train, but otherwise the brakemen get their instructions from the conductor or the engineer. It mat-

ters not from which he gets his information, provided it is correct. There is no duty upon the engineer to give the brakeman information as to his duties in the operation of the train; that is the duty of the conductor. It is only for the accommodation of the brakeman that the engineer gives him this information. When I tell the brakeman what is necessary to be done, it is his duty to do it."

We have, we think, stated substantially all the evidence in the record bearing upon the vital question in the case, to wit, whether or not the engineer was intrusted by the appellant with authority to superintend, control, command, or direct the appellee. It is well settled by the decisions in Railway v. Frazier, 36 S. W. Reporter, 432, and Railway v. Warner, 35 S. W. Reporter, 364, that unless such authority was invested in the engineer of the train, the appellee and the engineer were fellow-servants, and there is no liability on the part of appellant to appellee for any injury he may have sustained through any negligence of the engineer. This evidence, when analyzed, in our opinion amounts to this, and nothing more: that the head brakemen upon the freight trains of appellant frequently sought, as a matter of convenience to them, from the engineer, information as to their duties, and such information was usually, but purely as a matter of accommodation to the brakemen, given by the engineer; that there was no obligation upon the latter to do so, and that it was the duty of the brakemen to take instructions touching their conduct in relation to the running of the train, as well as other duties devolving upon them, from the conductors. It is true that the engineer who testified on the subject says that when such information as is asked for by a brakemen of an engineer is given him, it is the duty of the brakeman to obey the instructions of the engineer. But this does not prove that the engineer is authorized to superintend, control, command, or direct the brakeman in the performance of his duties. It is the duty of the brakeman to obey the instructions given him orally, provided they are correct, by the engineer, as it is his duty to obey the engineer's instructions when imparted by signals. In neither case does the engineer control, direct, or command, or superintend the brakeman, but he simply advises him as to the time and place, when and where, he will have to perform duties which the brakeman has assumed by his engagement to serve the railroad as a brakeman.

It is also true, that the appellee testifies that it was his duty to apply to the engineer for instructions as to duties to be performed by him, while the train was being run between stations, and that it was the duty of the engineer to impart the information; but he admits that the rules of the company, under which he says he was working, do not so provide. And we think the testimony of the appellee upon this point is but his opinion as to his conception of his duties and the powers and duty of the engineer; and this opinion seems to be based, in great part, on what he testifies was the custom upon other railroads upon which he had worked. We think the spirit, if not the letter, of the rules of the appellant company contradict this contention of the appellee. We do not see

the justice, or the wisdom, of the rule which holds the conductor responsible for the conduct of his brakemen in the performance of their duties, if they are under the superintendence, control, and command of the engineer.

Our conclusion is, therefore, that the judgment must be reversed and the cause remanded; first, because the evidence did not authorize the submission to the jury of an issue as to whether the appellee was subject to the superintendence, control, or direction of the engineer; and second, because, if there was a scintilla of evidence to support the affirmative of such an issue, and the court was justified in submitting the issue, it should have granted a new trial upon the motion of appellant, for the reason that the great preponderance of the evidence was against the finding of the jury. We are further of the opinion that the charge of the court is defective in not giving a more pointed and clearer instruction as to the proximate cause of the plaintiff's injuries. We do not find, however, that the court erred in refusing any of the requested charges of the appellant, except the fourth. Such of them as were not embraced in the charge of the court were properly refused.

*Reversed and remanded.*