# MARCH, 1924

## GULF, COLORADO & SANTA FE RAILWAY COMPANY v. CHARLES L. CONLEY AND WIFE.

### No. 3739.   Decided March 12, 1924.

(260 S. W., 561.).

**1.—Instructions to Juries—Charge—Objections.**

Since the adoption of article 1971, Rev. Stats., providing for the submission of the charge to counsel and presentation of their objections thereto, it is no longer necessary for them to request instructions supplying needed qualifications of a charge not affirmatively erroneous, where they made timely objection to the charge on such grounds.   (Pp. 474, 475).

**2.—Negligence—Carriers of Passengers—Degree of Care Required.**

In a case seeking recovery of damages to a passenger carried beyond the proper stopping place at destination, a charge that the carrier "was required to exercise the greatest degree of care which can be exercised under

all the circumstances short of a warranty of its passengers," imposed a greater duty upon it than is required by law, and was calculated to mislead the jury.  (Pp. 475-481).

3.—Same.

.The correct rule as to the degree of care required of railways as carriers of passengers is: "the exercise of. such high degee of foresight as to possible dangers, and such a high degree of prudence in guarding against them as 'would be used by very cautious prudent and competent persons under similar circumstances." International & G. N. Ry. Co. v. Halloren, 53 Texas, 46, approved as presenting a correct statement of the rule, and numerous Texas cases thereon reviewed.  (Pp. 475, 476).

4.—Same.

The instruction here considered and held erroneous requires of the carrier the exercise of every possible foresight and care. This is too exacting, and is not sufficiently guarded by the words "short of a warranty of its passengers," which have no commonly understood meaning.  (Pp. 476, 477).

Error to the Court of Civil Appeals for the Ninth District, in an appeal from Montgomery County.

Conley and wife sued the railway company for personal injuries to the wife as a passenger.  They recovered judgment, which was affirmed on defendant's appeal (236 S. W., 521).  Appellant, the railway company, thereon obtained writ of error.  The case being referred to the Commission of Appeals, Section A, that body, in an opinion by Randolph, J., recommended that it be reversed and remanded, and this judgment was entered by the Supreme Court June 30, 1923.  The opinion is published in 252 S. W., 737.  A motion for rehearing was filed and referred by the court to the Commission of Appeals on Oct. 1, 1923.  On Oct. 24, 1923, the case was withdrawn from the Commission of Appeals.  All orders made therein since the first reference of the case to the Commission of Appeals were set aside, and the case was set for submission in the Supreme Court.  It was submitted there Nov. 15, 1923, and the opinion here published was delivered March 12, 1924.

*W. N. Foster* and *F. J. & C. T. Duff* (*Terry, Cavin & Mills, General Solicitors*) for plaintiff in error.

Railroad companies are not insurers of the safety of their passengers further than could be required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them as would be used by very cautious, prudent and competent persons under similar circumstances.  Railway v. Welsh, 86 Texas, 203; Railway v. Halloren, 53 Texas, 53; Railway v. Woodall, 207 S. W., 84; Railway v. McDonald, 208 S. W., 912; Railway v. Smith, 87 Texas, 348; Railway v. Luten, 228 S. W., 159; McCarty v. Railway Co., 54 S. W., 421; Williams v. Railway Co., 67 S. W., 1085.

*McCall & Crawford,* for appellees.

The charge of the court defining degree of care of carrier to its passengers was correct, which is as follows: "A carrier of passengers is required to exercise the greatest degree of care which can be exercised under all of the circumstances short of a warranty of its passengers." H., & T. C. Ry. Co. v. Keeling, 102 Texas, 521; St. L., etc. Ry. Co. v. Moore, 161 S. W., 378-9; T. & P. Ry. Co. v. Miller, 79 Texas, 78; Gallagher v. Bowie, 66 Texas, 265; Levy v. Campbell, 19 S. W., 438; I. & G. N. Ry. Co. v. Welch, 86 Texas, 205; I. & G. N. Ry. Co. v. Williams, 183 S. W., 1185; Railway Co. v. Rogers, 60 S. W., 62; Railway Co. v. Wisdom, 216 S. W., 241; Shear. & Red. on Neg., 266; Webster's Dict. Def. of "utmost"; Railway Co. v. Kennedy, 12 Texas Civ. App., 654.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This case is here by writ of error from the Court of Civil Appeals for the Ninth District. A full statement of the case may be found in the opinions of the Court of Civil Appeals, 236 S. W., 521, and the Commission of Appeals, 252 S. W., 737.

Mrs. Conley, one of the defendants in error, a passenger on plaintiff in error's train, not having alighted at her station, was carried a short distance beyond, and injured.

The case was tried on a general charge in which the jury was instructed, in part, as follows: "A carrier of passengers is required to exercise the greatest degree of care which can be exercised under all the circumstances short of a warranty of its passengers." The plaintiff in error, before the charge was read to the jury, objected thereto "because the same does not state a correct rule of law and is more burdensome upon and imposes a greater duty upon a carrier of passengers than is required by law, and the defendant therefore says that the jury may be misled thereby to defendant's injury." These objections were in substance repeated to those paragraphs of the charge wherein the definition quoted above was applied to the facts of the case.

The Court of Civil Appeals concluded that the charge complained of was not affirmatively erroneous, "and therefore not reversible error in the absence of a requested instruction by appellant more fully explaining the degree of care required by appellant as a carrier of passengers." This was once the rule with reference to charges not affirmatively erroneous. Due, however, to statutory enactments, it is no longer so.

Revised Statutes, Art. 1971, in so far as material here, reads as follows: "The charge shall be in writing and signed by the judge; after the evidence has been concluded the charge shall be submitted to the respective parties or their attorneys for inspection and a rea-

sonable time given them in which to examine it and present objections thereto, which objections shall in every instance be presented to the court before the charge is read to the jury, and all objections not so made and presented shall be considered as waived.''

The Article further makes it the duty of the trial court to decide on and instruct the jury as to the law arising on the facts, and to submit all controverted questions of fact to the decision of the jury.

Article 1985, relating to the submission of cases on special issues, requires the court to submit all the issues made by the pleadings, and provides that the failure to submit any issues shall not be deemed a ground for a reversal of the judgment unless its submission was requested in writing by the complaining party.

These two statutes were enacted to accomplish the same purpose, and we think a failure to submit any particular issue under either statute can be reviewed on appeal only where the record shows a special charge was tendered on that issue.

But in the instance of a defective or erroneous charge on a subject or issue which the court has undertaken to charge upon, the objections required by Article 1971 take the place of special charges, and render it unnecessary that the latter be tendered. It is immaterial whether the matter objected to in the court's charge is a mere defective or incomplete statement of the law or issue to be determined, or is affirmatively erroneous; objections which sufficiently specify the error will preserve the point on appeal, without the necessity of again directing the court's attention to the same subject by special charge.

Had the Legislature intended that the complaining party should not only make objections, but tender a special charge as well, it undoubtedly would have said so. Having undertaken to state what must be done in this respect, the statute, under a well known rule of construction, must be held to have excluded the necessity of doing anything else. Other cogent reasons are given in the cases cited. Houston & Texas Central Ry. Co. v. Gant, 175 S. W., 745; Hines v. Kelley, 252 S. W., 1033.

We are of the opinion that the charge complained of was erroneous, in that it did impose a greater duty upon plaintiff in error as a carrier of passengers than is required by law, and that it was calculated to mislead the jury.

The true rule, as laid down by this Court, is that given in the case of International & Great Northern Railway Co. v. Halloren, as follows:

''Railroad companies, however, are not insurers of the safety of their passengers further than could be required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them, as would be used by very cautious, prudent, and competent persons under similar circumstances.''

International & Great Northern Ry. Co. v. Halloren, 53 Texas, 46;

International & Great Northern Ry. Co. v. Welch, 86 Texas, 203; St. Louis S. W. Ry. Co. v. Gresham, 106 Texas, 452; Paris & G. N. R. R. Co. v. Atkins, 111 Texas, 306; Trinity & Brazos Valley Ry. Co. v. McDonald (Com. of Appeals), 208 S. W., 912; St. Louis S. W. Ry. Co. v. Woodall (Com. of Appeals), 207 S. W., 84; Wisdom v. Chicago, R. I. & Gulf Ry. Co. (Com. of Appeals), 231 S. W., 344; Steed v. Gulf C. & S. F. Ry. Co. (Com. of Appeals), 231 S. W., 714; Houston & T. C. R. R. Co. v. Dotson, 15 Texas Civil Appeals, 73; Gulf C. & S. F. Ry. Co. v. Brown, 16 Texas Civil Appeals, 93; St. Louis, S. W. Ry. Co. v. Parks, 40 Texas Civil Appeals, 480; Galveston H. & N. Ry. Co. v. Morrison, 46 Texas Civil Appeals, 186; Pecos & Northern Texas Ry. Co. v. Coffman, 56 Texas Civil Appeals, 472; M. K. & T. Ry. Co. v. Dunbar, 57 Texas Civil Appeals, 411; St. Louis, S. W. Ry. Co. v. McCullough, 18 Texas Civil Appeals, 534; Dillingham v. Wood, 8 Texas Civil Appeals, 71; El Paso Electric Ry. Co. v. Harry, 37 Texas Civil Appeals, 90; Dallas Consolidated Traction Ry. Co. v. Randolph, 8 Texas Civil Appeals, 213; Missouri K. & T. Ry. Co. v. Dunbar, 49 Texas Civil Appeals, 12; Hines v. Parry, 227 S. W., 339; San Antonio, Uvalde & Gulf Ry. Co. v. Vivian, 180 S. W., 952; Gary v. Gulf C. & S. F. Ry. Co., 17 Texas Civil Appeals, 129; Green v. Houston Electric Co., 40 Texas Civil Appeals, 260; Davis v. Galveston H. & S. A. Ry. Co., 42 Texas Civil Appeals, 55; Gilmore v. Houston Electric Co., 46 Texas Civil Appeals, 315; Schaff v. Gordon, 214 S. W., 638; Fort Worth & D. C. Ry. Co. v. Brown, 205 S. W., 378. See also many authorities listed in Michie's Digest, Vol. 3, p. 835, Vol. 19, p. 96.

In no case called to our attention has it been held by any appellate court that the degree of care defined in the Halloren Case is incorrect, and we are convinced that the definition there given is the accepted one in this State.

That the charge in the instant case does impose a greater duty on the carrier, in a manner likely to mislead, is, we think, apparent. It instructs the jury that a carrier of passengers is required *"to exercise the greatest degree of care which can be exercised* under all the circumstances *short of a warranty of its passengers."* This language has a very different, and much more burdensome meaning, to that which tells the jury that the degree of care is that "required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them, as would be used by very cautious, prudent, and competent persons under similar circumstances."

The expression "short of a warranty" for the purposes of a jury trial really amounts to no limitation. The word "warranty" has no very well understood meaning. In dealing with the subjects of real estate, insurance, and contracts generally, it has highly technical meanings, the interpretation of which could only be made by ac-

complished lawyers.   See Webster's New International Dictionary (1911), p. 2305.   It is quite true there are various definitions of the word, some of which relate to security, or safety etc., but a full examination of these as given in the dictionaries will convince one that it has no commonly understood meaning, or one which would give a jury any definite limitation when used in a charge of the character here under examination.   The word, as used by text writers and in opinions of courts, with reference to obligations of carriers of passengers, has been used, we believe, for the purpose of differentiating between the rule of liability as applied to carriers of freight and of passengers.   Certainly this is the manner in which Mr. Hutchinson has used the word.   Hutchinson on Carriers of Passengers (3d ed.), Vol. 2, §§ 890 to 895, 900.

But when we come to determine what is warranted in a shipment of freight, we are confronted with a field of legal speculation which would require much learning and many pages of manuscript to explain and apply.   It involves all exceptions thereto,—as acts of God, the public enemy, defects of package, inherent vice of the article shipped, etc.

To say that a jury, unadvised as to the meaning of a term of such intricate and variant usage, would likely give it a correct interpretation in the charge in the instant case, is to be too credulous.   To say the least, an explanation should have been given when objections were made.

Nor does the remaining portion of the definition given by the court cure any defect in the limitation.   The greatest degree of care which can be exercised under all the circumstances short of a warranty, imports the superlative.   Greatest is the superlative of great.   It necessarily means in this case the superlative degree of care; that is, the whole amount of care,—all care possible under the circumstances short of a warranty.

The words "which can be exercised under all the circumstances," do not limit that which precedes.   *"Which can be done"* does not mean what it is practicable to do, but means that which *can* be done, whether practicable and consistent with the business or not.   It is as though the court had told the jury that the carrier's duty was to exercise the greatest degree of care possible, short of a warranty, for the reason that whatever *"can be"* done *is possible*.   Since the phrase "short of a warranty" amounted to no limitation in its practical effect, the charge was as erroneous as those condemned in the cases of International & Great Northern Ry. Co. v. Welch, 86 Texas, 203; St. Louis S. W. Ry. Co. v. Woodall (Com. of Appeals), 207 S. W., 84; Fordyce and Swanson, Receivers, v. Withers, 1 Texas Civil Appeals, 540; Fordyce v. Chancy, 21 S. W., 181.

Illustrations will make plain the conclusion that the charge imposes too great a burden on the carrier.

The fact is commonly known that heavy steel rails, rock ballasted road-beds, vestibuled trains, and steel coaches, are safer than light rails, less durable ballast, wooden cars, and coaches without vestibules; yet the latter are still in use by very cautious, prudent, and competent men engaged in the business of common carriers. See 4 Elliott on Railroads, § 1589a; 2 Hutchinson on Carriers, § 897; Rhodes v. H. E. & A. T. Ry. Co., 242 S. W., 263, 266; St. Louis S. W. Ry. Co. v. Christian, 191 S. W., 175; Chicago, R. I. & P. Ry. Co. v. Simpson (Ark.), 112 S. W., 875; St. Louis, I. M. & S. Ry. Co. v. Oliver (Ark.), 123 S. W., 662; Johnston v. St. Louis & S. F. Ry. Co. (Mo.), 130 S. W., 413.

The greatest degree of care would always require the very latest and safest equipment, the installation of block signal systems and other safety devices of undoubted merit, which make transportation safer; and yet a very cautious, prudent, and competent person might not provide or install these facilities.

In a case such as this one, the *greatest degree of care* would, of course, require the carrier to give each passenger actual personal notice of the arrival of the train at his station, and if one should be carried past, to run the train back to the station. These things could be done "under all the circumstances short of a warranty," and yet it is for the jury to say whether or not a very cautious, prudent, and competent person would do them under the facts and circumstances of each particular case.

It is quite elementary that a sick or an aged person, a delicate woman, or lame man, or child, or one not in the full possession of his faculties, where the infirmity is brought to the attention of the carrier, is entitled to a greater quantum of *care* than one in good health and under no disability. 4 Ruling Case Law, p. 1160, § 594; Stewart v. Houston & T. C. Ry. Co., 229 S. W., 577; East Line, etc. Ry. Co. v. Rushing, 69 Texas, 306, 315; Gulf C. & S. F. Ry. Co. v. Coopwood, 96 S. W., 102; International & G. N. Ry. Co. v. Gilmer, 45 S. W., 1028; Gulf C. & S. F. Ry. Co. v. Redeker, 100 S. W., 362; Chicago, etc. Ry. Co. v. Sears (Com. of Appeals), 210 S. W., 684; 3 Thompson on Negligence, §§ 2735 to 2739. By this it is not meant that they are entitled to a different degree of care to a well adult person. On the contrary, they are entitled only to that degre of care which would be exercised by a very cautious, prudent, and competent person under the circumstances, the same as any other passenger. But in the exercise of this degree of care a carrier might exercise only slight care in the instance of one in full possession of his faculties, and the *"greatest possible care"* in the case of a blind, insane, or ill person; and yet in each instance be in the full discharge of the duty imposed by law.

These illustrations suffice to show that the charge in question here, giving the language used its commonly understood meaning, exacted

a higher degree of care than that required by law. Illustrations might be multiplied by reference to every essential element of the duty of the carrier to its passengers.

Text writers in discussing the doctrine of the "highest degree of care," "greatest possible care," "the utmost care and diligence," etc., recognize that these are inaccurate and misleading statements of the true rule, unless qualified. 10 Corpus juris, p. 860, § 1299; Hutchinson on Carriers, Vol. 2, § 897; Street on Personal Injuries in Texas, § 238. The last authority cited states:

"But it will not do to require of the carrier the exercise of every possible precaution against injury to the passenger, for that would prevent the practical performance of the duty to transport with expedition in accordance with the usual requirements of business. *Hence it is not the highest degree of care, prudence, and foresight* for safety of the passenger which is required, but such degree of care, prudence, and foresight which a prudent man engaged in the business as usually conducted would employ, that is, such as is reasonably practicable."

That the "highest" and "utmost" degree cases impose a greater burden on the carrier than the rule declared in the Halloren Case, is recognized by high authority. Contrasting the latter with the former rules, Thompson in his work on Negligence says:

"Somewhat opposed to the foregoing is the doctrine that carriers of passengers are not required to exercise the 'utmost degree of care,' but only that high degree of care which very prudent persons would exercise under like circumstances." (§ 2726). * * *

"This is not understood as subjecting the carrier to liability for failing to use the extreme degree of care indicated in the language of the cases cited in a previous section." (§ 2729).

See Thompson on Negligence, §§ 2724, 2725, 2726, 2727, and 2729.

It is urged, however, that this Court is committed to the "highest" or "greatest degree of care" rule. After an extended examination of the cases, we do not believe that this Court has repudiated the rule of the Halloren Case, or has, at any time *when the issue was fairly raised, and necessary to the decision of the case,* approved any other. This Court has condemned charges which instructed the jury that it was the duty of the carrier to use "all possible care" for the safety of passengers. International & G. N. Ry. Co. v. Welch, 86 Texas, 203, and other cases supra.

It is true that in the Welch Case Associate Justice Brown, argumentatively, draws some distinction between "all possible care" and "utmost care," with the statement that the latter means the "greatest care," etc., and falls short of the former. He was drawing a distinction between the charge before him and those in the Levy and Gallagher Cases (19 S. W. and 66 Texas), hereafter noted, and there wrote for courts and lawyers, and not jurors. We think the criticism made by him of the "all possible care" charge in that case applies with the same force to the charge before us.

It is certainly true that the phrase "greatest possible care which can be exercised under all the circumstances short of a warranty" provides no definite rule, and might be understood, as said by Justice Brown in that case, to mean one thing by one man, and a different thing by another; that it might be understood by one man to mean all that the carrier could foresee, while to another all that might have been done as viewed after the occurrence; that the effect of the charge was "to submit the case to the opinions of the jurors, not upon the evidence under the law, but opinions not controlled by law nor based upon evidence."

There are certain cases where, in referring to the duty of carriers of passengers, it is said that the utmost or highest degree of care is required; but in these cases the question of the accuracy of a charge using these terms was not involved, and they were not used for the purpose of defining the essentials of a charge to a jury. Some of this class of cases are: Houston & T. C. Ry. Co. v. Gorbett, 49 Texas, 573, 576; St. Louis A. & T. Ry. Co. v. Finley, 79 Texas, 85; Missouri Pac. Ry. Co. v. Long, 81 Texas, 253; Gulf C. & S. F. Ry. Co. v. Smith, 87 Texas, 348; St. Louis & S. W. Ry. Co. v. Parks, 97 Texas, 131; Mexican Central Ry. Co. v. Lauricella, 87 Texas, 277; International & G. N. Ry. Co. v. Williams (writ refused), 183 S. W., 1185.

In other cases the trial court defined "utmost" or "highest" care in terms similar to those used in the Halloren Case. This, of course, made the charges correct. For cases of this character, see Levy v. Campbell, 19 S. W., 438; Gulf C. & S. F. Ry. Co. v. Brown, 40 S. W., 608; Pecos & N. T. Ry. Co. v. Trower, 130 S. W., 588; Dillingham v. Wood, 8 Texas Civil Appeals, 71.

In the case of Gallagher v. Bowie, 66 Texas, 265, the trial judge instructed the jury that it was the duty of the carrier (a stage coach proprietor) to employ a competent driver, and of the driver to use the "utmost care" for the safety of the passengers. This Court approved the charge, saying, however, that if it needed qualification, a special charge should have been requested. We have examined the original record in this case, and a special charge tendered by the carrier was tantamount to an approval of the court's charge as given, and the case might well have been disposed of on that question alone. We can not regard this case as an approval, on the record then before the court, of the doctrine of utmost care where timely objections are made thereto or explanatory charges tendered, or as a repudiation of the doctrine laid down in the Halloren Case.

In the case of Houston & T. C. Ry. Co. v. Keeling, 102 Texas, 521, the court in his general charge defined the duty of the carrier in such manner as to modify the "utmost care" charge given at the request of the plaintiff. This Court held that when the charges were considered together, there was no affirmative error, and in the absence of a requested charge tendered by the carrier, the giving of the special charge

did not constitute reversible error. This Court did, however, criticise the ''utmost care'' charge, saying:

''When such phrases are used the standard by which the conduct of the carrier under investigation is to be judged should be given in connection with them, which standard is the conduct of prudent and skillful carriers in like situation. Jurors are not put in a position to determine what constitutes the 'utmost' or the 'highest', or the 'high' degree of care referred to in charges, unless they are also told that it is that which such prudent and skillful carriers employ.''

An examination of the original papers on file here in the cases of Ft. Worth & Denver City Ry. Co. v. Rogers, 60 S. W., 61, and International & G. N. Ry. Co. v. Shuford, 36 Texas Civil Appeals, 251, shows that no special charges were asked further defining ''utmost care'' or ''highest degree of care.'' In addition, the Court of Civil Appeals in each case found negligence to exist as a matter of law. We, therefore, properly denied writs of error.

We have examined the original record in the case of Texas Central Ry. Co. v. Burnett, 80 Texas, 536. The trial court charged that:

''Railway companies that are carriers of passengers are held to the highest degree of care and prudence that can be exercised under the circumstances,'' etc.

No special charge was tendered explaining what was meant by the ''highest degree of care and prudence,'' and no objection was made to the charge as given as being incomplete or imposing a greater degree of care than that required by law. Exceptions were specially taken to the charge, but none to the above paragraph. In the motion for new trial and assignments of error the only criticism of the above quoted charge was that it was not the law. This, of course, was too general, and clearly insufficient to raise any question relative to it. This Court reversed the case for another reason, and in the opinion stated the charge was correct as to the degree of care. This must be understood, however, as having been said on the record we have described. We consider the case has no probative force where a charge is properly objected to and the question, as in this case, timely raised.

There are perhaps other cases which we might discuss, but we believe the foregoing a sufficient review of past holdings on the question here at issue. We adhere to the Halloren Case, and approve it not only as stating a correct rule of law, but as the expression of the rule which has received the unquestioned approval of this Court and the Courts of Civil Appeals.

The opinion of the Commission of Appeals was a correct one.

From the foregoing it follows that the judgments of the District Court and Court of Civil Appeals must be reversed, and the cause remanded to the District Court, and it is so ordered.

*Reversed and remanded.*