**EL PASO ELECTRIC CO. v. PORTILLO et al.**

No. 2589.

Court of Civil Appeals of Texas. El Paso.

Dec. 24, 1931.

Rehearing Denied Jan. 14, 1932.

Hunter, Brown & Brooke, of El Paso, for appellant.

Robert L. Holliday and Henry T. Moore, both of El Paso, for appellees.

PELPHREY, C. J.

These cases are companion cases to El Paso Electric Co. v. Portillo (Tex. Civ. App.) 37 S. W.(2d) 219, and reference is here made to that case for a statement of the facts.

Beatriz Portillo, plaintiff in one case, married after suit was brought, and by amendment her husband has been joined in the suit. In the other suit Carmen Portillo sues by her next friend. By agreement, the two cases were tried before the same jury without being consolidated. There was one general charge, but the issues were submitted separately and separate verdicts returned.

In both verdicts the jury found that the collision in which appellees were injured occurred at the southerly end of appellant's switch; that appellant's motorman failed to keep a reasonably careful lookout, failed to bring the car to a stop, and failed to sound the gong before entering the south end of the switch; that his failure in these respects was negligence and a proximate cause of appellee's injuries; that appellant was negligent in routing its cars going in a northerly direction over the switch, which was also a. proximate cause of the injuries suffered by appellees; that the collision was not an unavoidable accident; that the automobile in which appellees were riding was not being operated in excess of 20 miles per hour; that appellees did not fail to keep a proper lookout; that they were not negligent in continuing to ride in the automobile without protest; and that the automobile was not being operated at a high and immoderate rate of speed.

In the Beatriz Portillo Justiniani case the jury found the damages to be $1,575 and $4,075, in the Carmen Portillo case, $4,000 for Carmen Portillo, and $75 for her father.

The electric company has perfected an appeal from the judgments rendered upon the above findings.

### Opinion.

Appellant seeks reversal of the judgment upon the following grounds: (1) That the court's definition of unavoidable accident was incorrect, confusing, and misleading; (2) that the issue on unavoidable accident was improperly submitted, being on the weight of the evidence and failing to place upon appellees the burden of proof; (3) that there was no ·evidence warranting the submission of the issues on the question of whether the motorman failed to keep a reasonably careful lookout for vehicles approaching from the north; (4) that there was no evidence warranting the submission of the issue as to the motorman bringing the street car to a stop just before driving on the south end of the switch and no evidence supporting the finding that he was negligent in so failing; (5) that there was no evidence warranting the submission and no evidence to support the finding that appellant was negligent in . routing its cars going northerly over the switch; (6) that the court erred in submitting the issues relative to stopping the street car before driving onto the switch, without giving the jury a guide or rule whereby they might determine the question of appellant's negligence under the particular facts and circumstances: (7) that the court failed to submit to the jury appellant's defense under article 790 of the Penal Code, relative to driving the automobile at such a rate of speed as to endanger the life and limb of persons and the safety of property; and (8) that the court erred in submitting supplemental issues 1 (a), (b), and (c), without defining immoderate rate of speed or giving the jury any instruction to guide them in determining what is immoderate speed.

Appellant questions the correctness of the court's definition of unavoidable accident and also the manner in which it was submitted to the jury.

Assignment No. 1 raises the question of the correctness of the definition, and assignment No. 2 attacks the manner in which the issue was submitted. These two assignments are grouped in the argument presented in the brief, and in the statement and argument nothing is said upon the question of the correctness of the definition, but the whole argument is directed to the question of the manner in which the issue was submitted.

We therefore feel that we are not called upon to discuss the question of the correctness of the definition, but, as appellant has done, will limit our discussion to the question raised by the second assignment.

The issue was submitted thus:

"Question No. Six: Was the collision in question herein, an unavoidable accident? Answer yes or no.

"If you find from a preponderance of the evidence that the occurrence in question was not an unavoidable accident, answer 'No', but unless you do so find, answer same 'yes.'"

Appellant objected to this manner of submitting the issue, claiming that it was upon the weight of the evidence, and failed to impose upon the plaintiff the burden of showing by a preponderance of the evidence that the accident was not an unavoidable one, thereby placing upon appellant a heavier burden than the law requires.

We cannot agree with such contention. The court first inquired of the jury whether the collision was an unavoidable accident or not, telling them to answer "yes" or "no"; but in connection therewith he advised them that if they found from a preponderance of the evidence that it was not an unavoidable accident to answer the issue "no," and if they did not so find to answer "yes."

It is well settled that the burden is on the plaintiff to show, in cases where the issue of unavoidable accident is present, that the occurrence complained of was not the result of an unavoidable accident; therefore, when the court asked the jury, "Was the collision in question herein an unavoidable accident?" the burden was upon appellees to sustain a negative answer thereto by a preponderance of the evidence.

The court, in instructing the jury how to arrive at an answer to the issue as submitted, properly told them to find that the collision was an unavoidable accident, unless the preponderance of the evidence convinced them that it was not.

This appears to us to be the effect of the instruction, and properly placed the burden of establishing the negative of the issue upon appellees.

Appellant in its supplemental brief contends that the effect of the manner of the submission would be to require that the jury answer "yes," if in their minds the evidence should be balanced. We agree that such would be the effect, but we fail to see how appellant could be injured thereby. An affirmative answer to the issue would be saying that the collision was an unavoidable accident, and in such case appellant would not be liable.

■ There was a sharply contested question in the case as to whether the collision occurred at the southerly or northerly end of the switch; appellant's witnesses claiming that it occurred at the northerly end, and appellees and their witnesses testifying that it occurred at the southerly. The jury found that it occurred as claimed by appellees. The motorman testified that it occurred at the northerly end, and that he saw the automobile before the collision, and had stopped the street car before the collision. Other of appellant's witnesses testified as to the ringing of the gong on the street car, and that it was stopped at the time of the collision.

The theory the jury believed, however, was that the collision occurred when the street car, without stopping and without any alarm being given, turned onto the switch in front of the automobile in which appellees were riding, thereby causing the accident.

The motorman having testified that he did not stop the street car, and did not sound the gong before the street car entered the switch at its southerly end, and the jury having found that there was where the collision occurred, could, within their province, as it apparently did, disregard his testimony about seeing the automobile before the collision, and concluded that the reason why he had run the street car out onto the switch without stopping or sounding the gong was because he had not seen the automobile. The only way this action in not either stopping the street car or sounding the gong, under the circumstances depicted by appellees' evidence, can be reasonably accounted for, is that he did not see the approaching automobile which he would necessarily have done had he been keeping a lookout.

We therefore conclude that there was sufficient evidence to warrant the submission of, and to support the jury's findings on the issues as to, the motorman's failure to keep a lookout.

■ The record shows that the switch runs over the westerly portion of the highway, a portion used by vehicles traveling in a southerly direction; that the automobile in which appellees were riding, with its lights burning, was traveling over that portion of the highway, going in a southerly direction, and passing over the switch; and, according to the contention of appellees and as found by the jury, the street car was going in a northerly direction on the main line, meeting the automobile just prior to the collision.

With these facts before him, we think it a proper matter of inquiry as to whether the motorman was negligent in failing to stop the street car before driving it onto the south end of the switch into the path of the on-coming automobile.

■ In the case of El Paso Electric Co. v. Portillo, 37 S.W.(2d) 219, we held that the routing of the street cars by appellant over the switch in a northerly direction would not of itself constitute negligence, and we still adhere to that holding. We know of no law which prohibits the use made of the highway by appellant, and we fail to see how the operation of the street cars in a northerly direction would be any more dangerous than would be their operation in a southerly direction.

Appellees, in their petition, allege that it was negligence on the part of appellant to operate and use the switch at all, and that ordinary care and prudence required that, if such switch was to be used at all, street cars using the same should be operated and run upon it only in the direction of the city of El Paso, Tex., so that said street cars would be running with the automobile and vehicular traffic using the portion of the highway occupied by the switch, and would not be running against said traffic, intercepting and blocking it.

There is no evidence in the record tending to show that the operation of the cars in a northerly direction would be more dangerous than in a southerly one.

The undisputed facts are that the switch extends out on the paved highway, and that the operation of the street cars thereon affects only the south-bound traffic. With only such facts before us, we think it would be equally, if in fact not more, dangerous, to operate the cars in a southerly direction. In operating the cars in a northerly direction, the motorman has a clear view of the portion of the highway upon which the switch runs, and is able to see the condition of the traffic which will be affected by the use thereof by the street cars, and can therefore control the operation of the street car so as to prevent collisions between his street car and the vehicles on the highway, while, if coming into the switch from the north end, the traffic to be affected would be behind him, and he would have less opportunity to regulate the operation of the street car so as not to interfere with it.

█ It being the duty of appellant to use the portion of the highway in such manner as not to endanger the other users thereof, how can it be said that it was negligent in using it in the manner which gave its employees the better opportunity to avoid a dangerous interference with them? However, there being other acts of negligence found by the jury and supported by the evidence, the submission of this issue, even if erroneous, will not call for a reversal of the judgment. West Texas Coaches, Inc., v. Madi (Tex. Com. App.) 26 S. W.(2d) 199, and authorities there cited.

[7] The court submitted this issue to the jury: "Do you find from a preponderance of the evidence under all the surrounding facts and circumstances, that at or just prior to the accident, Blas Morales was operating the automobile in which plaintiff was riding at a high and immoderate rate of speed?"

This issue was submitted in both cases, and appellant interposed the following objection to its submission: "The court nowhere submits the defense raised by the defendant's pleading under article 790 of the Penal Code, relative to driving at such a rate of speed as to endanger the safety of life and limb of per-

sons and of property, though the court does submit special issues relative to speed, and in the explanation under special issue (a) refers to immoderate rate of speed, without directly submitting an issue relative to immoderate speed and without defining immoderate speed or giving the jury any instruction which would guide them in determining what is immoderate speed, and therefore the jury would be left to conjecture, and speculation in that particular."

Appellant in its statement and argument under the above assignment, contends that the term "high and immoderate rate of speed" is a technical term, and should have been defined, and refers us to article 2189, Revised Statutes, in which it is made the duty of the courts in submitting special issues to also submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.

Section B of the Commission of Appeals in the case of Robertson & Mueller v. Holden, 1 S.W.(2d) 570, in discussing the question of the duty of the court to give definitions of legal terms in the charge, said: "In the nature of things, the statute has not attempted to declare what 'legal terms' shall be explained or defined further than 'shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.' Reasonable necessity, considering the term or terms used, then, should be the test. Ordinary words of simple meaning, of course, need not be defined. But those terms which in law have a distinct fixed meaning which an ordinary person would not readily understand should, upon proper request, be defined."

The holding was approved by the Supreme Court.

Applying that test to the words "high and immoderate rate of speed," we are of the opinion that the words needed no defining. Under the issue as it was submitted, the jury was probably as able to say what was a high and immoderate rate of speed under the surrounding circumstances as the trial court itself would have been. The complaint that the charge did not directly submit an issue relative to immoderate speed is unjustified. The issue above quoted, we think, together with the issue as to whether the automobile was being driven at a rate of speed in excess of twenty miles per hour, certainly presented that issue.

█ The remaining question is presented by appellant's seventh assignment of error, which reads:

"Seventh Assignment.

"(1) The court fails to submit to the jury all of the issues raised by the defendant's pleadings and fails to submit to the jury the defense as to whether or not the automobile was traveling at the time of the accident at

such a rate of speed as to endanger the life or limb of persons and the safety of property as prohibited by article 790 of the Penal Code, which was pleaded by the defendant, and this issue was raised by both the pleadings and the evidence."

Appellant's pleadings pertinent to the question presented, were:

"(3) Further pleading herein, the defendant says that the act complained of by the plaintiff and the injuries, if any, suffered by her, were produced and brought about solely as a proximate result of and were proximately caused by the negligence of one Blas Morales, the driver of the car in which she was riding, and that his negligence was the sole proximate cause of the said injuries in that the said Blas Morales at the time was driving upon a pubilc highway in the County of El Paso, Texas, at a fast, reckless, dangerous and immoderate rate of speed, and was passing or attempting to pass the car of the defendant Company at the time of the accident at such a rate of speed as to endanger the life or limb of other persons and the safety of property, in violation of the express mandates of the statute, and therefore the plaintiff cannot recover in this behalf. * * *"

"(4) And further pleading, the defendant says the said accident and injuries to the plaintiff, Beatriz Portillo, if any, were brought about as a result of her own negligence and contributory negligence in failing to keep a lookout and in continuing to ride in the automobile under the circumstances hereinbefore alleged, without protest and in acquiescing in and assenting to the way and manner in which the said Blas Morales was driving and operating the said car."

It will appear from the above allegations that appellant was depending upon the fact that the automobile was being operated at such a rate of speed as to endanger the life of persons and the safety of property to support two of its defenses, viz.: (1) That the driving of the automobile in any such way and manner was the sole proximate cause of the injury; and (2) that the failure of appellees to protest against the automobile being thus driven was contributory negligence on their part.

The objections urged not calling the court's attention to which of its theories of defense it wished submitted by the court were probably too general to be relied upon here. Conceding, however, that it was sufficient, under the holding of the Supreme Court in Gulf, C. & S. F. R. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183, the failure to submit the issue cannot be reviewed by us, unless a special charge was tendered on the issue. In the argument of appellant under this assignment, certain issues on the question are quoted. They read:

"No. F: Was the automobile in which plaintiff, Beatriz Portillo, was riding at the time of and just prior to the collision, being driven at such a rate of speed as to endanger the life or limb of any person or the safety of any property?

"Answer yes or no.

"If you have answered the foregoing question 'yes' then answer the following:

"No. G: Did the plaintiff fail to protest at the way and manner in which the automobile was being operated at the time and place inquired about?

"Answer yes or no.

"If you have answered the foregoing question 'yes' then answer the following:

"No. H: Was such failure, if any, upon the part of the plaintiff to protest, a proximate cause of her injuries, if any? Answer yes or no."

These issues appellant claims it requested the court to submit to the jury, and the request was refused.

█ It will be seen that there was no issue requested as to whether appellee's failure to protest at the way and manner in which the automobile was being operated was negligence; therefore the issues as requested did not include all the issues upon which favorable findings would have established appellant's plea of contributory negligence.

There is some question in our minds whether the issues requested were so nearly correct as to be sufficient to call the court's attention to the matter upon which the charge was desired, and therefore, as contended by appellant, call for the submission of proper issues by the court. Texas Power & Light Co. v. Culwell (Tex. Com. App.) 34 S.W.(2d) 820.

█ This question need not be decided, however, for appellant has no assignment complaining of the court's action in failing to submit the requested issues.

On the original hearing of this case, we were of the opinion that the failure of the court to submit the requested issues was reversible error, but, after a more careful study of appellant's assignments, we have concluded that we were in error.

We have therefore decided to withdraw the former opinion and substitute the present one therefor.

The judgment of the trial court is affirmed.